[Civ. No. 53360. Second Dist.. Div. Two. May 30, 1979.]

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v. DEVONSHIRE COVERAGE CORPORATION et al., Defendants, Cross-complainants and Appellants.

## Counsel

Karon, Morrison & Savikas, John W. Morrison, Lillick, McHose & Charles and Kenneth R. Chiate for Plaintiff, Cross-defendant and Appellant.

Long & Levit, Greenberg & Glusker, Walter S. Weiss, Richard B. Wolfe, Irene M. Boyd, Bogert, Ehrmann & Halpern and David C. Bogert for Defendants, Cross-complainants and Appellants.

## Opinion

**COMPTON, J.**—Two insurance carriers, International Surplus Lines Insurance Company (ISLIC) and Hartford Fire Insurance Company (Hartford) both provided insurance coverage for Devonshire Coverage Corporation (Devonshire). The latter, itself, does business as a general insurance agent.

The instant action basically involves a dispute between the two carriers as to which of them is required to cover a particular loss suffered by Devonshire. Also involved is a claim by Devonshire against Hartford for damages based on breach of contract and unfair insurance practices.

The trial court judgment, in essence, provided that both carriers should share equally in the coverage and the cost of defending Devonshire in an

action brought against it in the federal district court of Nebraska. Further, the trial court ruled against Devonshire in its claim against Hartford.

A chronology of key events is as follows:

Effective October 25, 1972, Hartford issued to Devonshire a policy of insurance which had two components—(1) coverage for property loss due to fire and other perils, and (2) coverage for liability for personal injury and property damage. It is the liability coverage which is at issue here.

On December 31, 1972, Devonshire acting as agent for yet another insurance carrier, Central National Insurance Company of Omaha (Central), which carrier is not a party to this action, issued a policy of fire insurance on a clubhouse in Pennsylvania known as the Drexelbrook.

Under its agency contract with Central, Devonshire was limited to issuing policies not to exceed $500,000. The contract provided that as to risks exceeding that amount Devonshire would either obtain "reinsurance" or indemnify Central for the excess. Devonshire failed to obtain reinsurance.

On March 9, 1973, some three months after the Drexelbrook policy was issued, ISLIC issued to Devonshire an "Errors and Omissions" policy covering acts of negligence occurring in the course of Devonshire's business. That policy covered *claims* made after the issuance of the policy, but excluded claims based on "acts, errors and omissions committed or alleged to have been committed prior to the effective day [of the policy] for which other insurance exists. . . ."

On October 27, 1973, the Drexelbrook Club was destroyed by fire resulting in a loss in excess of $1 million. Central, by virtue of its fire policy, paid claims totalling $1,127,318.10 and faced additional claims of $177,698 contingent on proof of additional expenditures for repairs.

When Devonshire refused Central's demand for reimbursement of the amount in excess of $500,000, the latter initiated an action in the federal district court of Nebraska and obtained a judgment against Devonshire for $806,473.54.

Although Devonshire now admits that its liability to Central was "clear," it first tendered the defense of the Nebraska action to ISLIC. After reviewing the exclusion in the ISLIC policy, counsel for ISLIC suggested that the defense be tendered to Hartford. Hartford denied coverage and declined the tender. ISLIC then agreed to defend pursuant to a reservation of rights agreement.

The instant proceedings were commenced in California when ISLIC filed an action for declaratory relief against Devonshire and Hartford. Devonshire and Hartford each cross-complained against the other parties seeking declaratory relief. Devonshire, as noted, additionally sought damages from Hartford.

ISLIC concedes in its briefs that, but for the coverage afforded by Hartford, it would be liable to defend and indemnify Devonshire. It does claim, however, that Hartford's coverage is exclusive and the trial court erred in requiring ISLIC to share in the coverage. Thus it appears that Hartford's coverage is the pivotal issue in the case.

On this appeal, ISLIC is the primary party urging that the Hartford policy provided coverage. Devonshire's position is that regardless of the ultimate resolution of that issue, it is entitled to damages from Hartford for the latter's failure to provide a defense and participate in settlement negotiations.

The Nebraska judgment against Devonshire was based on findings that the "triggering event" giving rise to liability was the failure of Devonshire to obtain reinsurance on December 31, 1972, when it issued the fire policy on behalf of Central and that Central was entitled to recover from Devonshire in the same amount that it could have recovered from a "reinsurer" had there been one. Said another way, Devonshire itself became a "reinsurer" and stepped into the shoes of Central vis-à-vis Drexelbrook.

ISLIC contends that the trial court in the present action was bound by those findings. (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558 [334 P.2d 881]; *Kapelus* v. *United Title Guaranty Co.,* 15 Cal.App.3d 648 [93 Cal.Rptr. 278].) The result would be that Devonshire's "Error and Omission" occurred prior to the effective date of the ISLIC policy.

The trial court, however, simply alluded to the Nebraska court's findings and, in holding that ISLIC was bound to provide coverage, found that, even though Hartford's policy also provided coverage, the "triggering event" was Devonshire's *continuous failure* to provide reinsurance during the period December 31, 1972, up to the date of the Drexelbrook fire. The effect of this finding, then, was to fix the date of Devonshire's omission at a time subsequent to the issuance of the ISLIC policy.

We need not decide the issue of which finding is controlling because either finding is, in our opinion, fatal to ISLIC's position on the issue of Hartford's coverage. Under either finding the "triggering event" of liability was the failure to obtain reinsurance. Such failure was an "error and omission" which would invoke the ISLIC coverage but it was not, as we shall discuss, a "triggering event" under the Hartford policy.

The Hartford·policy's liability provision contained the usual phrase which states in pertinent part:

"The Company will pay on behalf of the insured all sums which the insured shall become *legally obligated to pay as damages* because of . . . property damage . . . caused by an occurrence . . ." (Italics added.) Specifically excluded was ". . . liability assumed by the insured under any contract [other than] an incidental contract [1] . . . ."

The exclusion, however, was later negated by special endorsement which extended coverage to "contractual liability assumed by [the insured] under a contract designated in the schedule of this insurance. . . ." The premium for the indorsement is shown to be "$5.00 minimum."

Contracts designated in the schedule are described as "That part of all written agreements, . . . in which the insured assumed liability of others."

The parties agree that the effect of this indorsement was to provide liability coverage to Devonshire in situations where Devonshire had by written contract assumed the liability of a third party. They disagree as to what *type* of assumed liability was covered.

---

[1] Incidental contracts are specifically described in the policy. They are not relevant here.

■    Hartford contends that while coverage extended to liability of third parties assumed by contract, the type of liability intended to be covered was the same as that covered by the direct liability provisions of the main policy, to wit, tort liability.

ISLIC concedes that the basic policy covering the direct liability of Devonshire is limited to tort liability. It contends, however, that the indorsement is a separate and self-contained policy of insurance which is not so limited.

■    Our task is to interpret the contract of insurance so as to give effect to the intent of the parties at the time of contracting. (Civ. Code, §§ 1636, 1648.) In so doing we look to the entire contract and are governed by the language used where that language is clear. (Civ. Code, §§ 1638, 1641.)

■    The attempt by ISLIC to isolate the indorsement is unavailing. It was executed simultaneously with the basic policy. Several contracts relating to the same matter and which are part of one transaction are to be read together (Civ. Code, § 1642) and the circumstances under which a contract is made may be considered in interpreting it. (Civ. Code, § 1647.)

■    Various key phrases and definitions in the indorsement are identical to those used in the basic policy. Even if we examine the indorsement in isolation it cannot reasonably be interpreted to provide the coverage for which Devonshire and ISLIC contend.

The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results . . . in bodily injury or property damage" and "property damage" as "injury to or destruction of tangible property."

When the various relevant clauses are placed in proper juxtaposition, the liability provisions of the policy and the indorsement read as follows: "The Company will pay on behalf of the insured all sums which the insured [on his own behalf or] by reason of contractual liability assumed by him under a contract in which the insured assumes the liability of others, shall become legally obligated to pay as damages because of an accident, including injurious exposure to conditions resulting in injury to or destruction of tangible personal property."

The "triggering event" of the Hartford coverage is necessarily an "occurrence" which caused "bodily injury" or "property damage" as those terms are defined in the Hartford policy.

It is essential to ISLIC's position on the Hartford coverage that the Drexelbrook fire itself be viewed as the "occurrence" which forms the basis of Devonshire's liability. Under that view, ISLIC contends that the Hartford contractual liability indorsement affords coverage because Devonshire's contract with Central, which required the former to indemnify the latter, amounted to a written contractual assumption of Central's liability.

What then was the nature of Central's liability which Devonshire assumed? Obviously Central itself had no direct liability for the fire because of any duty imposed by law. Central's liability was a contractual obligation to reimburse Drexelbrook for certain specified losses within the limits of the policy of fire insurance.

"Damages" as that phrase is used in the law, describes compensation by a person at fault to another who is injured by an unlawful act or omission. (Civ. Code, § 3281; Black's Law Dict. (4th ed. 1951) p. 466.) Hence, Central, absent its contract with Drexelbrook, was not "legally obligated to pay as damages" any compensation to Drexelbrook.

When viewed in this context it becomes readily apparent that, like Central, Devonshire, as a result of assuming Central's liability, was not under any duty imposed by law to respond in damages for the fire. Its duty was purely contractual. To hold otherwise and thus require Hartford to cover the loss would convert the Hartford policy from a liability policy to a fire policy.

Neither Devonshire nor ISLIC has cited us to any case in which a comprehensive liability policy or a contractual liability indorsement such as the one here involved has been construed to cover liability arising ex contractu. Conversely, Hartford cites numerous authorities which suggest that the usual comprehensive liability policy with or without indorsement extension for liability assumed by contract refers to liability sounding in tort. (63 A.L.R.2d 1122; *United States Fidelity & Guar. Co.* v. *Virginia Eng. Co.,* 213 F.2d 109 [63 A.L.R.2d 1114]; 5 Couch, Cyclopedia of Insurance Law, § 1165, pp. 4136-4137; *Union Paving Co.* v. *Thomas,* 186 F.2d 172; *Ritchie* v. *Anchor Casualty Co.,* 135 Cal.App.2d 245 [286 P.2d

1000]; *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.,* 19 Cal.App.3d 914 [97 Cal.Rptr. 498].)

The phrase "legally obligated to pay as damages" as used in the Hartford policy, is synonymous with "damages for a liability imposed by law." That latter phrase has been uniformly interpreted as referring to a liability arising ex delicto as distinguished from ex contractu. (*Ritchie* v. *Anchor Casualty Co. supra.*) The theory that Devonshire assumed a liability of Central for which Hartford provided coverage cannot be sustained by the terms of the policy or applicable law.

The logic of this result can best be observed by shifting the position of the parties and posing the hypothetical question "assuming that Hartford had issued its liability policy directly to Central, would that policy have provided Central coverage for the loss it suffered by reason of its contractual obligation to compensate Drexelbrook under the fire policy?" The answer is clearly "no" yet that is the very loss, the liability for which, ISLIC contends was assumed by Devonshire.

In short, no conduct by Devonshire or Central, whose liability was assumed by Devonshire, resulted in any property damage or personal injury as envisioned by the Hartford coverage.

In our opinion, Devonshire's liability to Central can be viewed in just three ways. First, as a negligent failure to obtain reinsurance which could be characterized as tortious. Secondly, as Devonshire having *assumed,* by agreeing to indemnify, a *portion of Central's obligation to Drexelbrook* under its fire policy coverage. Thirdly, as a failure by Devonshire to pay Central for the excess loss which failure could be characterized as a direct breach of contract.

The first type of liability is that specifically covered by ISLIC's "Errors and Omissions" policy. On the other hand, Devonshire's conduct in failing to obtain reinsurance was not an "accident or occurrence" resulting in "property damage" within the Hartford policy terms and definitions. Neither ISLIC nor Devonshire seriously advances this theory because it would necessarily involve the direct liability coverage of the basic policy which obviously does not cover such liability.

In eschewing this theory and relying on the "contractual liability endorsement," ISLIC, however, finds itself on the horns of a dilemma by

virtue of its attempt to invoke the exclusion in its own policy. It strikes us as inconsistent to argue on the one hand that Devonshire's liability was based on the failure to obtain reinsurance and at the same time argue that the Hartford liability policy, which was in place at the time of that alleged failure, was in effect "reinsurance."

The second, or assumption, theory of liability we have already discussed.

■ The third theory, and in our opinion the one which truly underpins the Nebraska judgment, is that by its failure to pay Central on demand for the excess loss, either with funds obtained from a reinsurer or from Devonshire's own capital, Devonshire was guilty of breach of its contract with Central.

Under that theory Devonshire's liability is a direct liability for its own misfeasance and there is no need to look to the indorsement in the policy covering contractually assumed liability of third parties. Since ISLIC concedes that the basic policy covering direct liability extends only to personal injury and property damage resulting from tortious conduct, the Hartford policy cannot be held to cover the liability for breach of contract.

■ The attempt by ISLIC to apply the coverage of the Hartford policy to Central's judgment is not consonant with the reasonable expectations of the parties at the time of the execution of the Hartford contract of insurance. It is not reasonable to expect that Hartford intended, by its relatively simple and limited indorsement for which a relatively small premium was paid, to create entirely new areas of risk, i.e., negligent failure to reinsure or assumption of a third party's liability on a contract of fire insurance, considering that ISLIC's premium for essentially identical coverage was $11,500. (Compare *Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841].)

In connection with Devonshire's reasonable expectations and intent, it is relevant to note that Devonshire was itself involved in the insurance industry and thus would be expected to be knowledgeable in the field of insurance and the practices therein. It is significant to us that when the claim first arose Devonshire turned first to ISLIC and the "Errors and Omissions" policy. It was only after ISLIC's counsel, in an effort to invoke the exclusion in ISLIC's policy, made the suggestion that Hartford

was contacted. Correspondence between Devonshire and ISLIC, which was introduced into evidence, points to the conclusion that Devonshire had no real expectation that Hartford would provide coverage.

Finally, Devonshire takes the position that it was the victim of procrastination by both ISLIC and Hartford and, as a result of the failure of the two carriers to cooperate and promptly settle Central's claim, it suffered a devastating business reversal. For reasons best known to Devonshire, however, it brought an action in damages only against Hartford.

The trial court, as noted, found that Hartford was obligated to provide coverage and defend and failed to do so. There was the further finding, however, that that failure did not amount to a bad faith refusal to defend and in any event Devonshire suffered no damage as a result of such failure.

Devonshire's attack on the trial court's findings in this regard proceeds from the fact that that court found Hartford was obligated to provide coverage. Our contrary conclusion substantially disposes of Devonshire's claims.

Conceding the possibility that this court might reach such a conclusion, Devonshire contends, however, that Hartford's duty to defend was broader than its duty to provide coverage and that Devonshire should be awarded damages for breach of the duty to defend.

The trial court's findings that Hartford was not guilty of any fraud or oppression are well supported by the evidence. The Nebraska action was capably and competently defended and resulted in a judgment less than the limits of either the ISLIC or Hartford policy. ISLIC's counsel testified that there were several valid defenses in the Nebraska action. Hartford's counsel did participate in discussions with ISLIC's counsel and counsel for Central concerning settlement.

There is a dearth of evidence in the record that Devonshire suffered any demonstrable damage by the failure of Hartford to appear in the action. ISLIC's counsel testified that he considered Central's demand for settlement of $1 million (the policy limit) to be unreasonable and although he was of the opinion that the case might have been settled for less, refused to settle without Hartford's participation.

Further, it was ISLIC that instituted the present action joining Devonshire as a defendant, yet Devonshire pressed its damage claim only against Hartford. *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Mullen* v. *Glens Falls Ins. Co.,* 73 Cal.App.3d 163 [140 Cal.Rptr. 605]; *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], are inapposite.

The judgment insofar as it requires Hartford to contribute to the defense of Devonshire, to contribute to the payment of the judgment against Devonshire and to bear costs is reversed. In all other respects the judgment is affirmed. Hartford to recover costs on the combined appeals.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied June 21, 1979, and the petitions of appellants International Surplus Lines Insurance Company and Devonshire Coverage Corporation for a hearing by the Supreme Court were denied August 1, 1979.