The HOME INDEMNITY
COMPANY, Plaintiff,

v.

Milton AVOL, et al., Defendants.

No. CV 87–1839 RSWL(Kx).

United States District Court,
C.D. California.

Jan. 17, 1989.

Alan H. Lazar, Elise D. Klein, Parkinson, Wolf, Lazar & Leo, Los Angeles, Cal., for plaintiff.

Timothy J. Hogan, Michael T. Kennick, Hogan, Baynes & Haworth, Los Angeles, Cal., for defendants.

## ORDER

LEW, District Judge.

On December 12, 1988 plaintiff The Home Indemnity Company ("Home") had a motion for summary judgment on calendar and set for hearing. While plaintiff termed the papers as a motion for summary judgment, it is not dispositive on all of the issued raised in the Third Amended Complaint. Therefore, this Court addressed the pending motion as a partial summary judgment. Pursuant to Federal Rule of Civil Procedure 78, the Court took the matter under submission for disposition on the papers and without oral argument. After careful consideration of all of the briefs and documents filed in support of and in opposition to the motion, along with all of the papers and documents contained in this file, the Court issues the following:

Plaintiff Home brings their motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7 alleging that the Home's policy of insurance with defendants Milton Avol and Ann Avol (collectively "Avols") does not cover any attorneys' fees incurred during the course of seeking injunctive relief for tenants in the underlying matter of *Maria Guadalupe Castenada, et al. v. Milton Avol, et al.*, Superior Court of California, County of Los Angeles, Case No. C 561 663, August 19, 1985) (hereinafter "*Castenada*").

The Second Amended Complaint for Damages and Injunctive Relief (hereinafter "complaint") in the *Castenada* matter alleged causes of action that were contract and tort based. Those causes of action included the following:

—breach of warranty of habitability (contract);

—breach of warranty of habitability (tort);

—breach of covenant of quiet enjoyment;

—unlawful retaliation;

—nuisance;

—negligent maintenance of the premises;

—unlawful entry onto the premises pursuant to California Civil Code § 1954;

—invasion of privacy;

—negligent infliction of emotional distress;

—intentional infliction of emotional distress;

—conversion and violation of California Civil Code §§ 1950.5 or 1950.7; and

—unfair business practices.

The *Castenada* complaint was brought by present and former tenants in buildings owned by the Avols for uninhabitable living conditions. Those tenants successfully sought a series of injunctions that required the Avols to rectify the uninhabitable living conditions. They are now seeking attorneys' fees under California Code of Civil Procedure § 1021.5.[1] The question now before this Court is whether those attorneys' fees are "damages" and covered by the insurance policy in this case.

■ Home has set forth, and the Avols have agreed, that where there is solely a breach of contract action, damages are not recoverable. The insuring language of the policy before this Court states that Home is to pay,

"all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage." [2]

---

**1.** Section 1021.5, Code of Civil Procedure, otherwise known as the private attorney general doctrine, provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest," if other criteria, set forth in the statute, are met.

**2.** The insurance policy also contains a Supplementary Payment Provision which states "[t]he company will pay, in addition to the applicable

This type of language has been found by California courts to cover only tort liabilities, and not contractual liabilities. *Fireman's Fund Insurance Co. v. City of Turlock*, 170 Cal.App.3d 988, 995, 216 Cal.Rptr. 796, 802 (1985). In *Turlock*, it was noted that the above phrase was construed to be synonymous with language that an insurer was obligated to pay "damages for liability imposed by law." *Id.* Furthermore, "[b]oth phrases.... have been uniformly interpreted as referring to liability 'ex delicto' as distinguished from 'ex contractu.' Thus, the policy covered tort, but not contract liability." *Id.* citing *International Surplus Lines Co. v. Devonshire Coverage Corp.*, 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979).

In determining whether the verdict sounds in contract or tort under *Devonshire*, the court must determine the "nature of the damages awarded." *Turlock*, supra 170 Cal.App.3d at 995, 216 Cal.Rptr. 796, citing, *Devonshire*, supra, 93 Cal. App.3d at 610, 155 Cal.Rptr. 870. The determination of the nature of the damages is a question of law for the Court to determine. *Turlock*, supra, 170 Cal.App.3d at 995, 216 Cal.Rptr. 796. The question before this Court is whether the nature of the attorneys' fees requested are contractual, tortious or both.

The *Castenada* complaint states that the defendant landlords failed to maintain the buildings in a safe and habitable condition. Therein, they list numerous "slum-like" conditions. Contained in the Preliminary Statement of the *Castenada* complaint is the following,

> "Plaintiffs' claims derive from the failure by defendant landlords to maintain the buildings in a safe and habitable condition. As a result, plaintiffs have been subjected to severe fire hazards; severe infestation by rats, rodents, roaches and other vermin and pests; lack of hot water and heat; common areas littered with garbage and debris; and generally unsafe and dilapidated structures; and a serious lack of personal security. Plaintiffs seek by this action to enjoin defendants' failure to operate the buildings in compliance with law and to enjoin harassment and retaliation. Plaintiff's also seek damages for the deplorable conditions to which defendants have subjected them."

*Castenada v. Avol, et al.*, Superior Court of the State of California, County of Los Angeles, Case No. C 561 663, Second Amended Complaint for Damages and Injunctive Relief. Also, all of the causes of action in the *Castenada* complaint incorporate by reference the "Common Allegations of Plaintiffs." In summary, the complaint states facts that are based on the living conditions of the buildings where the plaintiffs resided.[3]

---

limit of liability: (a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment...." The Avols contend that as an award of attorneys fees against an insured are "costs taxed against the insured", *Folsom v. Butte County Association of Government*, 32 Cal.3d 668, 186 Cal.Rptr. 589, 652 P.2d 437 (1982), and that they are therefore covered under the policy. This argument is persuasive but for the fact that the provision is for excess liability. Logically, in order for the "excess" to apply, there must be underlying coverage under the policy. Furthermore, the language "all costs taxed against the Insured" is limited by the proviso "in any suit defended by the company." The insuring agreement of the policy states that "the company shall have the right and duty to defend any suit against the Insured in seeking damages on account of such bodily injury or property damage." When a suit is for injunctive relief, the supplementary costs provision cannot cover any third-party attorneys' fees. See, *Board of County Commissioners v. Guarantee Insurance Co.*, 90 F.R.D. 405, 407–8 (D.Col.1981).

**3.** The complaint basically states that the rented and common areas of the building were uninhabitable due to a number of dilapidated conditions. Examples of the factual allegations include the following: that such conditions were in violation of building health and safety codes, that defendants refused to make necessary repairs, that the security measures in the buildings were inadequate even though situated in high-crime areas and because so the plaintiffs were subjected to criminal offenses from unauthorized persons, that defendants violated the tenants' right to privacy and enjoyment and have harassed them, that the mailboxes were not repaired or adequately maintained and that the plaintiffs failed to receive their mail in a regular and normal fashion thereby causing them emotional distress, and that the defendants and their agents harassed the plaintiffs for

The Home has set forth in their papers that even though there are tort theories in the complaint, they are all predicated on the landlord-tenant contract between the parties.[4] This contention is supported by the injunctive orders issued by the court which were obtained in an effort to cure the conditions surrounding the subject properties. See, Avol's Opposition, p. 8.[5]

California cases have held that in situations with insurance policies similar to the one before this court, only tort liabilities, and not contractual liabilities, are covered. In *Devonshire,* the court held that Devonshire's liability to Central was purely contractual. In the court's view only three theories could support the judgment against Devonshire; negligent failure to obtain the insurance, Devonshire's breach of the agreement to assume a portion of Central's obligation to the business injured by the fire and Devonshire's breach of its agreement to pay Central the excess over $500,000. While some of the theories were based in tort, Devonshire's liability depended upon the existence of a contractual duty. Therefore, the Hartford policy, with or without its contractual liability endorsement, did not cover the damages awarded against Devonshire. *Turlock,* supra 170 Cal.App.3d at 995, 216 Cal.Rptr. 796, citing, *Devonshire,* supra, 93 Cal.App.3d at p. 611, 155 Cal.Rptr. 870 (emphasis added).

Again, in the matter of *Turlock,* where the jury in the underlying matter found that the disclosure violated the agreement between Polston and City, the "critical point" was that absent the contractual promise, there would have been no liability. *Id.* 170 Cal.App.3d at 996, 216 Cal.Rptr. 796. The court specially noted that "the jury's finding that City was liable for breach of contract formed the 'basis of the judgment' against City which it in turn now seeks to bring within the coverage of the Fireman's Fund policy." *Id.*

■ Likewise, this Court now finds that the basis of an award of attorneys' fees in the *Castenada* action would be premised on a contractual duty. Absent the landlord-tenant contract agreement, the tenants in *Castenada* would have no standing or basis in which to bring suit. Furthermore, in light of the "Preliminary Statement" and the "Common Allegations" contained within the *Castenada* complaint, it becomes even more apparent that the basis for the lawsuit was the uninhabitability of the premises. Without the contract of tenancy between the Avols and the *Castenada* plaintiffs, plaintiffs would never have been subjected to the conditions alleged and would never have had proper standing to seek and obtain recovery; they would not have been able to receive the injunctions and attorneys' fees therein. Even though the complaint sounds in causes of action that are contractual and tortious, it is the contractual breach of warranty of habitability that underscores all of the claims. But for the contract, plaintiffs would never have received the injunctions granted by the Superior Court for repairs and mandates to make and keep the building habitable.

their participation in a tenants' association. *Castenada v. Avol, et al.,* Superior Court of California, County of Los Angeles, Case No. C 561 663, Second Amended Complaint for Damages and Injunctive Relief.

4. The Home contends that the tortious breach of warranty claim rests on the same facts as the contract breach of warranty claim, that the nuisance and negligent maintenance of the premises are based on the uninhabitable condition of the building, likewise for the emotional distress claim. They further claim that the unlawful entry and invasion of privacy are alternative theories for the breach of the covenant of quiet enjoyment and conversion rests on the allegations that the Avols retained tenant security deposits in breach of the rental agreement.

5. The injunctive orders clearly were aimed towards making the buildings habitable. The October 31, 1985 Order required the Avols to maintain an interest bearing account for repairs to the apartments and required the parties to collect information on the habitability of the apartments for a future hearing. On December 13, 1985, the court ordered the Avols to install security doors and to hire a security guard for the apartments. The May 5, 1986 order required the Avols to retain a property manager to ensure that the buildings were brought into full code compliance and on or about January 14, 1987 the court appointed a receiver to manage the properties.

The basis of the lawsuit and in following, the recovery of attorneys' fees, is that the Avols were under a contractual obligation to supply habitable premises to the tenants, and to maintain the habitability of the premises throughout the tenancy.[6] The gravamen of the complaint was that the buildings were unsafe, uninhabitable and in dilapidated condition. It is the warranty of habitability cause of action that serves as the springboard for all of the other causes. They are, as Home suggests, extensions of or in reliance on, the habitability action.[7] As the theory of warranty of habitability is premised on contractual theories, and as the *Castenada* complaint is based on the warranty of habitability, this Court accordingly finds that the nature of the damages sounded in contract.

It is imperative that a court consider what an insurance policy truly means to cover. Coverage should only extend to what was anticipated by the parties. In addressing this very point, the court in *Devonshire*, supra, 93 Cal.App.3d at 612, 155 Cal.Rptr. 870, noted that "[t]he attempt by ISLIC to apply the coverage of the Hartford policy to Central's judgment is not consonant with the reasonable expectations of the parties at the time of the execution of the Hartford contract of insurance." The court further noted that it was not reasonable to expect that the insurance company intended, by its relatively simple and limited endorsement for which a rela-

tively small premium was paid, to create entirely new areas of risk. *Id.*

In construing an insurance policy, a court should give the words used their plain and ordinary meaning and not strain construction to impose on the insurer a liability it has not assumed. *Insurance Company of the West v. Haralambos Beverage Company*, 195 Cal.App.3d 1308, 1316, 241 Cal.Rptr. 427 citing *St. Paul Fire & Marine Insurance Co. v. Superior Court*, 161 Cal.App.3d 1199, 1202, 208 Cal. Rptr. 5 (1984). The court in *Haralambos* noted that the complaint revealed that there was no claim seeking recovery for property damage or bodily injury. In fact, the liability under all of the causes of action depended upon the existence of a contractual duty. Even though the complaint sought recovery for punitive damages for fraudulent inducement into a purchase agreement, the Court found that the cause of action, as with all of the others, was premised on a breach of contract and not on property damage or bodily injury. The case before this court is similar to *Haralambos*. While tort causes of action have been raised, they are all premised on the existence of the landlord-tenant contract and the alleged breached therein. Nowhere in the *Castenada* complaint are there allegations of property damage or bodily injury to the plaintiffs. The express terms of the policy note that coverage is extended to "property damage" or "bodily injury". As noted above, this type of lan-

---

**6.** It has been noted that contract law, as codified in the implied warranties of merchantability and fitness of the Uniform Commercial Code, has recognized that the buyer of goods and services relies upon the seller to assure their quality. Modern leases bear much similarity to contracts for the sale of goods: the landlord often rents housing as a "commercial businessman" and has the ability to adequately inspect and repair the premises as part of the business operations; the tenant represents the typical consumer who must rely upon the landlord to provide premises that are fit for leasing. Powell, Richard R., *The Law of Real Property*, Volume 2, p. 233[2] (1988).

**7.** The basis of the lawsuit and in following, basis for any recovery of attorneys' fees, is that the Avols were under a contractual obligation to supply habitable premises to the tenants, and to maintain the habitability of the premises

throughout the tenancy. The gravamen of the complaint was that the buildings were unsafe, uninhabitable and in dilapidated conditions. It is the warranty of habitability cause of action that serves as the basis for all of the other causes. They are, as Home suggests, extensions of or in reliance on, the habitability action. Historically, the decision of *Javins v. First National Realty Corp.*, 428 F.2d 1071 (D.C.Cir. 1970), *cert. den.* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970) served as the impetus for development of the implied warranty of habitability in American law wherein they rejected the traditional notion of caveat emptor. *Javins* noted that leases of urban dwelling units should be interpreted and construed like any other contract and that contract principles strongly suggest that a warranty of habitability be implied into all contracts for urban dwellings. *Id.* at 1075, 1080.

guage has been interpreted as covering claims ex delicto and not ex contractu. *Turlock,* supra, 170 Cal.App.3d at 995, 216 Cal.Rptr. 796. From a reading of the insurance policy, it is apparent that the parties in this action did not anticipate to cover attorneys' fees that were awarded because of the Avols' failure to maintain the premises in a habitable condition.

The Avols are not asking for coverage of damages for bodily injury or property damage. Rather, they are seeking coverage of the attorneys' fees their tenants may be awarded while seeking a series of injunctions compelling the Avols to honor their contractual obligations.

■ The Avols' argument that the Home must indemnify them for any attorneys' fees due to injunctive relief precipitated by covered causes of action for alleged negligence of its insured is unconvincing. Where an underlying action is for equitable relief, an insuring agreement like the Home's does not give rise to an obligation by the insurer either to defend or to indemnify.[8] See, *Nationwide Insurance Co. v. King,* 673 F.Supp. 384 (S.D.Cal.1987). See also, *Jaffe v. Cranford Insurance Co.,* 168 Cal.App.3d 930, 935, 214 Cal.Rptr. 567 (1985). Accordingly,

IT IS HEREBY ORDERED:

The Home Indemnity Company's motion for partial summary judgment is granted against defendants Milton and Ann Avol. The Home's Policy of Insurance with the Avols (Policy No. CCP 207142) does not cover any attorneys' fees that may be awarded to the tenants against the Avols for injunctive relief sought in the underlying action of *Maria Guadalupe Castenada, et al. v. Milton Avol, et al.,* Superior Court of California, County of Los Angeles, Case No. C 561 663, August 19, 1985.

---

**8.** In the Home's Exhibit "B" to the Malchow Declaration, the declaration of Barrett S. Litt, counsel for the underlying tenants, states that "[t]his fee application seeks compensation for those matters which were entered in to the Avol–Injunction file and does not seek it for matters entered into the Avol–Damages file."