George R. **CHAMBERLAIN,**
**Plaintiff–Counter–Defendant–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Counter–Claimant–Appellee.**

No. 89–56157.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1990.

Decided May 3, 1991.

As Amended on Denial of Rehearing
July 1, 1991.

George R. Chamberlain and Philip D. Peatman, Law Offices of Philip D. Peatman, Long Beach, Cal., Kent L. Richland and Robert A. Olson, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for plaintiff-counter-defendant-appellant.

Scott J. Vida, Pollak & Vida, Los Angeles, Cal., for defendant-counter-claimant-appellee.

Before FERGUSON, NORRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

George R. Chamberlain appeals from the district court's summary judgments in favor of Allstate Insurance Company ("Allstate") on Chamberlain's bad faith claim and on Allstate's counterclaim for declaratory relief. We affirm.

## FACTS

Chamberlain's 12½–year relationship with Melinda Mackay ended badly. In February 1989, Mackay filed a lawsuit against Chamberlain in Los Angeles Superior Court (the "underlying suit"). This underlying suit asserted causes of action for declaratory relief, imposition of a constructive trust, breach of an implied contract and intentional infliction of emotional distress. Mackay alleged that the couple entered into an express oral or implied quasi-marital agreement to share equally all property acquired by the "community" during the relationship. Chamberlain tendered to Allstate the underlying suit and requested indemnity and a defense.

Allstate insures Chamberlain under its Deluxe Plus Homeowners' Policy. The policy promises that

> Allstate will pay all sums arising from accidental loss which an insured becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

The policy also provides that Allstate will defend the insured against suit, "even if the allegations are groundless, false or fraudulent."

On March 24, two days after being notified of the underlying suit, Allstate forwarded Chamberlain's request to its counsel for a coverage opinion. Allstate refused to give Chamberlain a date by which it would reach its decision. To avoid prejudice to Chamberlain's defense, however, Allstate obtained from Mackay a thirty-day extension of time for Chamberlain to respond to her complaint. On April 18, Allstate notified Chamberlain that it would provide him a defense, subject to a full reservation of its rights under the policy. In the meantime, however, on April 7, Chamberlain had filed this action in the Los Angeles Superior Court. He alleged Allstate had breached its implied covenant of good faith and fair dealing by failing to undertake his defense in a timely manner. Then, on April 28, Chamberlain filed a second state court action in which he requested a declaration that his Allstate policy afforded him coverage for Mackay's claims. This second state court action is still pending.

On May 5, Allstate removed Chamberlain's first state court action (the bad faith action) to federal court. Removal was based on diversity jurisdiction. Allstate then filed a counterclaim in federal court seeking a declaration that the policy did not cover Mackay's claims against Chamberlain. On June 12, the district court granted summary judgment in Allstate's favor on Chamberlain's bad faith complaint. On August 31, the district court granted summary judgment in Allstate's favor on Allstate's counterclaim for declaratory relief. Chamberlain appeals both judgments.

## DISCUSSION

### A. Chamberlain's Bad Faith Action Against Allstate

An insurer does not have the obligation to immediately defend *any* suit tendered to it by an insured. Instead, an insured who claims his insurer was dilatory in providing a defense bears the burden of showing that the insurer delayed "without proper cause." *California Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 54, 221 Cal.Rptr. 171 (1985). Chamberlain does not carry that burden here. He clearly presented a novel claim, and Allstate reasonably took time to review its position before undertaking Chamberlain's defense under a reservation of rights.

Nor was Chamberlain prejudiced by the delay. Chamberlain first presented Mackay's suit to Allstate on March 22, thirteen days before the initial deadline to file a response. Allstate obtained an extension of time from Mackay that allowed it to

fully consider its options. On April 18, seventeen days before a response was due under the extension, Allstate told Chamberlain it would provide a defense under a reservation of rights. Chamberlain made no showing that he was prejudiced in any way by this delay.

We conclude that the district court did not err in granting Allstate's motion for summary judgment in Chamberlain's bad faith action.

### B. Allstate's Declaratory Relief Counterclaim

■ California law requires an insurer to defend lawsuits against its insured if one of two conditions is satisfied. An insurer must provide a defense if the claim brought against the insured raises the potential for covered losses, *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 266–67, 419 P.2d 168, 54 Cal.Rptr. 104 (1966), or if ambiguous language in the policy leads the insured reasonably to expect that a defense will be provided. *Producer's Dairy Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 718 P.2d 920, 226 Cal.Rptr. 558 (1986).

### 1. Potential Coverage Under the Policy

■ By its terms, Chamberlain's policy covers only "sums arising from *accidental loss* which an insured becomes legally obligated to pay...." (emphasis added). Allstate argues that because any loss to Mackay resulted from Chamberlain's intentional act in ending their relationship, there is no potential for coverage under the policy and no duty to defend. Chamberlain argues that although he may have acted intentionally in ending the relationship, any resulting losses to Mackay occurred accidentally. He likens his position to that of a speeding driver involved in an accident: he may have intended to speed, but he never intended to hurt anyone.

An insured bears the burden of proving that a claim falls within the scope of the policy. *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986). Where no potential for coverage exists, the insurer need not provide the insured with a defense. *Giddings v. In-dustrial Indem. Co.*, 112 Cal.App.3d 213, 219, 169 Cal.Rptr. 278 (1980). In the present case, Chamberlain grounds his coverage argument, and his entitlement to a defense, on the contention that the losses allegedly suffered by Mackay constitute "accidental losses" rather than losses resulting from Chamberlain's own intentional acts.

The difference between accidental and intentional acts was explained in *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273 (1989). There, the California court stated:

[W]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury. Conversely, an "accident" exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.

The following is illustrative. When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car— would be intentional and any resulting injury would be directly caused by the driver's intentional act.

Here, the district court supported its summary judgment by analogy to cases in which the insurance claim arose in the context of wrongful discharge. This is an appropriate analogy. California courts have consistently held that damages resulting from wrongful termination necessarily constitute non-accidental losses. *See, e.g., Commercial Union Ins. Co. v. Superior Court*, 196 Cal.App.3d 1205, 1209, 242 Cal. Rptr. 454 (1987) ("[a]n intentional termination is not an 'occurrence' under the policy because it is not an accident."). Even

where the wrongful termination spawns emotional suffering and negligence claims, California courts have refused to consider these losses "accidental." *See Dyer v. Northbrook Property & Cas. Ins. Co.*, 210 Cal.App.3d 1540, 259 Cal.Rptr. 298 (1989); *Commercial Union*, 196 Cal.App.3d at 1205, 242 Cal.Rptr. 454. Similarly, Chamberlain's refusal to share the alleged quasi-community property with Mackay should not be considered accidental merely because he did not intend Mackay to be hurt by his intentional acts. The sundering of the relationship, like termination of an employment relationship, remains the crucial act for coverage purposes.

Chamberlain argues the true nature of Mackay's claims can be gleaned from a second amended complaint Mackay filed and in which she included a cause of action for negligence. We reject this argument. This second amended complaint provides absolutely no explanation of the nature of Chamberlain's alleged negligence. We read this pleading as a mere reinterpretation of the facts set forth in the original complaint. That is, it has as its factual core alleged intentional acts by Chamberlain that deprived Mackay of "her" property.

Moreover, the assertion of a negligence claim in the underlying suit would not alter the fundamental nature of Mackay's claims. Once again, the wrongful termination cases are illustrative. In *Hartford Fire Ins. Co. v. Karavan Enters., Inc.*, 659 F.Supp. 1077, 1081 (N.D.Cal.1987) the court stressed:

> Claims for negligent conduct must be treated analytically as an integral part of the assertedly wrongful discharge. Any alleged harm comes about as an intended or unintended consequence of the conduct of discharge, but in neither case constitutes an "accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." [*Royal*

*Globe*, 181 Cal.App.3d at 537–38, 226 Cal. Rptr. 435].

Chamberlain's conduct, therefore, cannot be described as "accidental" in any sense of the word.

It is also instructive that under California law standard liability contracts such as Chamberlain's Allstate policy do not cover losses arising from breaches of contract. *See Home Indemnity Co. v. Avol*, 706 F.Supp. 728, 729–30 (C.D.Cal.1989); *Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1317, 241 Cal.Rptr. 427 (1987). As one court noted, "The phrase 'legally obligated to pay as damages' [as used in Chamberlain's Allstate policy] ..., is synonymous with 'damages for a liability imposed by law.' That latter phrase has been uniformly interpreted as referring to a liability arising *ex delicto* as distinguished from *ex contractu.*" *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.*, 93 Cal. App.3d 601, 611, 155 Cal.Rptr. 870 (1979).

Because Mackay bases all of her claims on the existence of a quasi-marital agreement, whether express or implied, all of her alleged damages in the underlying suit relate to breach of a contract. Chamberlain's insurance policy with Allstate does not cover these claims, nor is there any potential for such coverage.

## 2. Chamberlain's Expectation of a Defense

■ Chamberlain next contends that notwithstanding our determination that Mackay's claims are not covered under the policy, nor is there any potential for coverage, Allstate still must provide him a defense. He relies on *Gray*, 65 Cal.2d at 272–73, 419 P.2d 168, 54 Cal.Rptr. 104, and argues that the language of the policy led him reasonably to expect Allstate would defend him from claims such as those made by Mackay in the underlying suit.

The *Gray* analysis does not apply to the facts of this case. In cases like this, California courts distinguish between situations in which the dispute focuses on whether a particular loss falls within a

policy's coverage and those in which the dispute focuses on the applicability of an exclusionary clause to conduct concededly covered by the policy. As one court explained:

> The present case is readily distinguishable from *Gray* and many of the cases following it, which have broadly interpreted the insurer's duty to defend. In each of these cases, damage of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. Here, on the other hand, the question concerns the scope of the basic coverage itself....

*Giddings*, 112 Cal.App.3d at 218, 169 Cal. Rptr. 278 (citations omitted). As Allstate points out, in seeking a declaratory judgment that it did not owe Chamberlain a defense, it did not rely on any "unclear exclusionary clause" in the policy. The policy simply does not cover the claims made by Mackay in the underlying suit. The *Gray* analysis, therefore, is inapplicable.

In addition, California courts have recently clarified the "reasonable expectation" doctrine, stating that

> this rule of construction is applicable only when the policy language is held to be unclear.... Whether language in a contract is ambiguous is a question of law. We are also guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained reading of the policy language.

*Producer's Dairy*, 41 Cal.3d at 912, 718 P.2d 920, 226 Cal.Rptr. 558. *See also AIU Ins. Co. v. Sup.Ct.*, 51 Cal.3d 807, 821–22, 799 P.2d 1253, 1264, 274 Cal.Rptr. 820, 831 (1990) (citations omitted). Because the "accidental loss" provision of the policy is clear and unambiguous, we need not reach this issue. Even assuming some ambiguity, "[w]hether the insured's expectation

of coverage is reasonable is a question of law." *Hallmark Ins. Co. v. Sup.Ct.*, 201 Cal.App.3d 1014, 1019, 247 Cal.Rptr. 638 (1988) (citations omitted). Chamberlain's expectations of coverage here are unreasonable and therefore cannot be honored.

## C. The District Court's Exercise of Jurisdiction

Finally, Chamberlain argues that because his own declaratory relief action which he filed in the Los Angeles Superior Court is still pending there, the district court should have refused to exercise its jurisdiction to decide Allstate's counterclaim which involved the same state law coverage questions.

We review de novo the district court's decision to exercise its jurisdiction under the Declaratory Judgments Act when a state action is pending. *See Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir.1988) (per curiam). In conducting this review, we recognize that district courts generally have the "virtually unflagging obligation" to exercise the jurisdiction given them, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), and that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247. The *Colorado River* test, however, does not apply where the Declaratory Judgments Act, 28 U.S.C. § 2201, is involved.[1]

"Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942). Thus, when a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists

---

**1.** Our opinion in *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 542 (9th Cir.1985), could be read to suggest that the *Colorado River* test should be applied where the federal suit requests declaratory relief. Our more recent cases, however, have clarified the special status of the Declaratory Judgments Act. *See, e.g., Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1253–55 (9th Cir.1987) (commenting on *Mobil Oil*).

a presumption that the entire suit should be heard in state court. *Id.*

■ The pendency of a state court action, however, does not of itself require a district court to refuse declaratory relief in federal court. In deciding whether to grant such relief in a particular case, the Supreme Court has counseled district courts to

ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* A district court, therefore, when deciding whether to exercise its jurisdiction under the Declaratory Judgments Act, must balance concerns of judicial administration, comity, and fairness to the litigants. We think the district court struck the proper balance here.

■ On the one hand, the district court could have refused to resolve Allstate's declaratory relief counterclaim. Allstate raised no federal issue, and Chamberlain's pending state court action clearly could have resolved the issues presented by the counterclaim. Indeed, except for a cosmetic difference—the switch in positions of who was claiming relief—the state court declaratory relief action essentially mirrored the federal action.

On the other hand, an examination of the rationales underlying the *Brillhart* decision suggests the district court took the proper course. The Court in *Brillhart* founded its holding on at least three rationales. First, the Court wanted to avoid having federal courts needlessly determine issues of state law. The Court recognized the difficulty federal district courts would have in ruling on complex state law issues

when it warned that "scattered opinions of an intermediate appellate court of a State may convey only doubts and confusion to one inexpert in the law of that State and yet be entirely clear and consistent when placed in the mosaic of the whole law of that State." *Id.* at 497, 62 S.Ct. at 1177.

Second, there is a concern that parties could attempt to avoid state court proceedings by filing declaratory relief actions in federal court. This kind of forum shopping could be avoided by requiring district courts to inquire into the availability of state court proceedings to resolve all issues without federal intervention. *Id.* at 495, 62 S.Ct. at 1175.

Third, the Court no doubt wanted to avoid duplicitous litigation. As the Court noted, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.*

The district court's exercise of its jurisdiction in this case does not contravene any of the *Brillhart* concerns. In most cases when a district court refrains from exercising its jurisdiction, the result is that no aspect of the proceeding remains in federal court. *See, e.g., Brillhart,* 316 U.S. at 491, 62 S.Ct. at 1173; *Fireman's Fund,* 860 F.2d at 353; *Fern v. Turman,* 736 F.2d 1367 (9th Cir.1984), *cert. denied* 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985). This is not so here. Even if the district court had refrained from exercising its jurisdiction over Allstate's declaratory relief counterclaim, the district court still would have had to exercise its diversity jurisdiction over Chamberlain's bad faith suit. And, in order to adjudicate that bad faith suit, the district court had to determine the scope of the policy's coverage under California law. Thus, whether the district court decided the entire controversy, or refrained from deciding part of it, major issues of state law necessarily had to be decided in federal court.

Unlike *Brillhart,* where the defendant filed an action for declaratory relief in federal court in response to a declaratory relief action in state court, here the district court already had jurisdiction over Cham-

berlain's removed bad faith lawsuit when Allstate filed its counterclaim for declaratory relief. By adjudicating the declaratory relief counterclaim, the district court avoided piecemeal litigation. As it now stands, the district court's grant of summary judgment is *res judicata* in the state action. The entire controversy has been resolved in one courtroom, albeit a federal one, and the *Brillhart* strictures have been accommodated.

AFFIRMED.