967 F.2d 586
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GOLDEN VILLAGE, LTD; Stanley R. Garris; Robert C.
Crandall, Plaintiffs-Appellants,
v.
INSURANCE COMPANY OF NORTH AMERICA; American States
Insurance Company, Defendants-Appellees.
 No. 91-55414.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1992.
Decided June 25, 1992.
 
 Before CANBY, REINHARDT and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The defendants, Insurance Company of North America (INA) and American States Insurance Company (American), provide comprehensive general liability insurance for a mobile home park owned by the plaintiffs (Golden Village). In January of 1988, tenants of the mobile home park filed a complaint against Golden Village alleging breach of the rental agreement, intentional infliction of emotional damages, and violation of various provisions of the Mobilehome Residency Laws, Cal.Civ.Code § 798 et. seq. As a result of the filing of the complaint, Golden Village filed an action against the defendants to compel them to provide a defense in the action brought by its tenants. The district court granted summary judgment for American. Golden Village stipulated to a judgment in favor of INA in order to permit entry of a final judgment and thus make the case appealable. It then filed this appeal. We reverse the judgment in favor of American and affirm the judgment in favor of INA.
 
 
 3
 Under California law, which governs this diversity action, an insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." CNA Cas. of California v. Seaboard Sur. Co., 222 Cal.Rptr. 276, 279 n. 1 (Cal.App.1986) (internal quotations omitted). Thus, we must determine whether it is possible that the tenants' action will give rise to liability that falls within the policy. In doing so, we must resolve any doubts in favor of the insured and against the insurer. Id. (citing Eichler Homes, Inc. v. Underwriters at Lloyd's, London, 47 Cal.Rptr. 843 (Cal.App.1965)).
 
 
 4
 The American policy indemnifies Golden Village for losses "sustain[ed] by reason of the liability imposed upon the Insured by law or assumed by the Insured under contract ... [for damages] caused by an occurrence." A natural interpretation of the phrase "liability ... assumed by the Insured under contract" is that the insurer shall reimburse the insured for any liability resulting from a breach of its contractual obligations. Thus, at least on its face, the policy would appear to require American to defend Golden Village in the state court proceeding.
 
 
 5
 American, however, urges us to follow our general statement in Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir.1991), that "under California law standard liability contracts such as Chamberlain's Allstate policy do not cover losses arising from breaches of contract," id. at 1365. However, the insurance policies in Chamberlain and the cases upon which it relied all covered the insured for "liability imposed by law." See id.; Home Indemnity Co. v. Avol, 706 F.Supp. 728, 729-30 (C.D.Cal.1989); Insurance Co. of the West v. Haralambos Beverage Co., 241 Cal.Rptr. 427, 430 (Cal.App.1987). None of the policies had language resembling the "assumed by the Insured under contract" phrase contained in the American policy at issue here.[1] Indeed, if we accept American's assertion that the language "imposed upon the Insured by law" refers solely to liability arising ex delicto, then logically we must interpret the disjunctive phrase "or assumed by the Insured under contract" in a way that has independent meaning. And under the rule of construction that favors the insured in instances of unclear language, the best interpretation is that the disjunctive phrase refers to liability arising ex contractu. Cf. C.H. Heist Caribe Corp. v. American Home Ass. Co., 640 F.2d 479, 481-82 (3d Cir.1981).
 
 
 6
 In addition, even were we to limit the policy coverage to liability imposed by law, we would find a duty to defend based on the allegations of statutory violations contained in the tenants' complaint. The tenants' complaint alleged violations of Cal.Civ. Code §§ 798.56 (prohibiting wrongful termination), 798.15 (language requirements for rental contracts), 798.17 (12 month duration required for rental contracts), and 798.77 (prohibiting rental contracts by which a tenant waives his or her rights under the Civil Code). These claims do not depend upon a contractual breach by Golden Village, but rather have an independent basis in Golden Village's legal obligations to its tenants. In such cases, California law deems the claim to arise out of tort, rather than contract. See Young v. Bank of America Nat'l Trust & Savs. Ass'n, 190 Cal.Rptr. 122, 126 (Cal.App.1983) (holding that a bank's violation of its statutory obligation to its credit cardholders to limit their liability for charges on stolen cards to $50 was an action sounding in tort rather than contract).
 
 
 7
 Our conclusion is not inconsistent with that in Avol. The Avol court found that liability for statutory violations in that case did not fall within the policy's coverage because "[t]he gravamen of the complaint was that the buildings were unsafe, uninhabitable and in dilapidated condition. It is the warranty of habitability cause of action that serves as the springboard for all of the other causes." 706 F.Supp. at 732. The breach of contract claim in the state court complaint, by contrast, is not the "springboard" for the statutory causes of action. For example, the § 798.77 claim alleges that the tenancy contracts were themselves in violation of California law; liability arising from this allegation is obviously independent of any claim that the allegedly illegal contracts were breached. Similarly, the claim for wrongful termination does not depend in any meaningful way on the alleged contractual breaches. Accordingly, it is the analysis in Young and not Avol that controls this case.
 
 
 8
 American next asserts that it has no duty to defend because the damages alleged in the tenants' complaint did not arise from an "occurrence." According to American, the policy's definition of an occurrence as a "happening ... which results in personal injury ... neither expected nor intended from the standpoint of the insured" limits its coverage to unintentional injuries. Golden Village responds that, even if that were true, the damages alleged in the tenants' complaint, such as wrongful termination, are unintentional within the meaning of the policy. We need not resolve this dispute, however, because we find that the policy does not limit coverage to unintentional events.
 
 
 9
 The definition of "occurrence" as a "happening" is ambiguous with respect to whether an occurrence may be an intentional event. "Happening" is certainly not a term of art with a well-defined meaning. We therefore must look to other provisions of the contract in order to determine whether "occurrence" has been unambiguously confined to only intentional events. In so doing, we find that it has not. The policy, in defining the sorts of personal injuries that are covered, lists as examples wrongful eviction, wrongful entry, malicious prosecution, racial or religious discrimination not committed by or at the direction of the insured, and assault and battery not committed by or at the direction of the insured. We see no meaningful distinction between wrongful eviction and wrongful termination with regard to the degree to which the injury is expected or intended by the insured. Further, malicious prosecution would seem to be a quintessential intentional injury. In view of this list of injuries, we do not believe that the policy unambiguously excludes from coverage the breaches of contractual and statutory obligations alleged in the tenants' complaint. Accordingly, we find that the inclusion of the term "occurrence" is no bar to a finding that American has a duty to defend Golden Village in that proceeding.
 
 
 10
 By contrast, we find that the INA policy unambiguously excludes the type of liability at issue in the state court action. That policy defines "occurrence" as "an accident, including continuous or repeated exposure to the same event, that results ... in bodily injury, personal injury, or property damage." It also defines "accident" as "[a] sudden, unforeseen, unintended result." We believe that, unlike American's use of the ill-defined term "happening", INA's use of the term "accident" clearly refers to unintentional events. INA's definition of accident as an "unintended result" further clarifies this point and removes whatever residual ambiguity otherwise would have remained. Because the term and its definition are clear, we do not look beyond them to other portions of the contract. Thus, for purposes of the present appeal, there is no source of confusion or uncertainty in the policy that we would be obligated to construe in favor of the insured. Instead, we are left with a relatively clear insurance agreement that is not fairly interpreted to include intentional injuries. Thus, INA is not obligated to defend Golden Village.[2]
 
 
 11
 In conclusion, the summary judgment in favor of American is reversed and the stipulated judgment in favor of INA is affirmed. The case is remanded to the district court for further proceedings in conformity with this disposition.
 
 
 12
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided for by 9th Cir.R. 21
 
 
 [1]
 International Surplus Lines Ins. Co. v. Devonshire Coverage Corp., 155 Cal.Rptr. 870 (Cal.App.1979), is an exception. In International Surplus, an insurance policy issued to an insurance agency excluded liability for all "liability assumed by the insured under any contract" except for certain designated contracts for which coverage was provided for "[t]hat part of all written agreements, ... in which the insured assumed liability of others." Id. at 873. The Court held that the "liability of others" referred only to liability imposed on others ex delicto and not ex contractu, so that the policy covered only the contractual assumption of tort liability. See id. at 874. The policy obtained by Golden Village is not subject to the same limiting construction as the one in International Surplus. Golden Village's policy covered liability assumed under contract and not just the liability of others assumed under contract. As one cannot assume one's own tort liability under contract, "liability assumed under contract" must refer to liability arising ex contractu
 The American policy and the policy in Avol also differ with respect to their purposes. The policy in Avol was issued to an insurance agency. When an insurance agency obtains insurance, it is rational to believe that its policy serves the purpose of passing on to a re-insurer the tort liability of third parties that the agency had contractually assumed and therefore to construe the policy as not passing on the liability of others arising ex contractu. Golden Village, by contrast, was not in the insurance business and would have no rational reason for passing on to a reinsurer the tort liability of others since it never contractually assumed any such liability by issuing an insurance policy of its own. Instead, as the owner of a mobile home park, it would in the ordinary course of its business enter into contractual obligations with mobile home tenants. In that context, the most natural interpretation of "liability assumed by the Insured under contract" is the liability that would imposed on the insured for its failure to perform its contractually imposed obligations.
 
 
 [2]
 To the extent that any specific item of coverage set forth in the INA policy may suggest a contrary result, a different mode of analysis might be required. However, for the claims' involved here, none of which are of the type set forth specifically in the policy, the analysis set forth above is sufficient