972 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SCOTTSDALE INSURANCE COMPANY; National Liability & Fire
Insurance Co., Plaintiffs-Appellees,
v.
Milton AVOL, M.D.; Ann Avol, Defendants-Appellants.
 No. 91-55773.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 7, 1992.
Decided July 22, 1992.
 
 Before FARRIS, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This litigation arises out of the slumlord activities of Milton Avol. Avol's slumlording has been enjoined, he has been ordered to pay damages, and has even been confined to house arrest in one of his own tenements. In the current case, Avol appeals the district court's grant of summary judgment in favor of Scottsdale Insurance Company (Scottsdale) and National Liability and Fire Insurance Company (National). The district court held that the insurers' policies did not cover an award of attorney fees pursuant to Cal.Civ.Proc.Code § 1021.5 in the underlying action, Castenada v. Avol, No. C 561 663 (Cal.Super.Ct.1985). We reverse.
 
 DISCUSSION
 I. Waiver and Estoppel
 
 3
 Avol argues that Scottsdale and National waived and are estopped from asserting denial of coverage for the section 1021.5 attorney fees because they defended him in the underlying Castenada action without reserving their rights.
 
 
 4
 " '[W]here waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured.' " Garcia v. CalFarm Ins. Co., 6 Cal.App.4th 885, 895, --- Cal.Rptr.2d ---- (1992) (quoting Intel Corp. v. Hartford Acc. & Indemnity Co., 952 F.2d 1551, 1559 (9th Cir.1991)). The cases have merged the concepts of waiver and equitable estoppel in the area of an insurer's reservation of rights. See Intel, 952 F.2d at 1559 n. 5; Insurance Co. of the West v. Haralambos Beverage Co., 195 Cal.App.3d 1308, 1320, 241 Cal.Rptr. 427 (1987). Thus, Avol must show misconduct on the part of the insurers or detrimental reliance to prevent the insurers from asserting noncoverage.
 
 
 5
 There is absolutely no evidence or allegation of misconduct on the part of the insurance companies. See Intel, 952 F.2d at 1559-60 (discussing examples of misconduct); cf. Garcia, 6 Cal.App. 4th at 895-96. The insurers delayed their reservation of rights, but ultimately they did expressly reserve their rights to assert noncoverage for the attorney fees. Cf. Miller v. Elite Ins. Co., 100 Cal.App.3d 739, 754, 161 Cal.Rptr. 322 (1980). While this might have been a mistake or a poor judgment call, there is nothing to suggest that it rises to the level of affirmative misconduct.
 
 
 6
 Avol claims that he detrimentally relied on the insurers' unconditional defense because, upon the advice of the insurers' lawyers, he stipulated to certain injunctions in June 1986. He argues that the injunctive relief ultimately supported the award of section 1021.5 attorney fees.[1] We are not convinced. Prejudice usually "exists where the insured, in reliance on the insurer's defense under the policy, fails to retain an attorney, fails to negotiate a settlement, and fails to deal directly with the opposing party or counsel." Haralambos, 195 Cal.App.3d at 1321; see Stonewall Ins. Co. v. City of Palos Verdes Estates, 7 Cal.App.4th 309, ----, --- Cal.Rptr.2d ---- (1992) (detrimental reliance from compromise of attorney-client confidentiality). None of these appears here. Avol had independent advice to rely on when he decided to stipulate to the original injunctions.[2] He has not met his burden of establishing prejudice or detrimental reliance from the insurers' delayed reservation of rights.[3] In the absence of prejudice, the insurers did not waive their rights to assert noncoverage by defending Avol in the underlying Castenada action without a timely reservation of rights, nor are they estopped.
 
 II. Offensive Collateral Estoppel
 
 7
 The insurers argue that Avol is collaterally estopped from relitigating the issue of whether section 1021.5 attorney fees are covered under the policies because that issue was conclusively decided against him in Home Indemnity Co. v. Avol, 706 F.Supp. 728 (C.D.Cal.1989), aff'd, 912 F.2d 469 (1990) (memorandum disposition). Home Indemnity held that under a general liability policy and supplemental provision identical to that of Scottsdale's and National's, there was no coverage for section 1021.5 attorney fees. Id. at 733.
 
 
 8
 "Offensive" collateral estoppel permits a plaintiff who was not a party to a prior judgment to use that judgment to prevent a defendant from relitigating issues conclusively determined against the defendant in a earlier proceeding. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). However, considerations of fairness significantly influence the application of this doctrine. Id. at 330-31, 99 S.Ct. at 651.
 
 
 9
 The application of the Home Indemnity decision to Avol in this action would be unfair. The cases upon which the district court relied in Home Indemnity no longer control the disposition of this case. The guiding precedents are the recent California cases of AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990), and City of Pomona v. Employers' Surplus Lines Ins. Co., 4 Cal.App.4th 818, 5 Cal.Rptr.2d 910 (1992), petition for review filed, Apr. 28, 1992, time for grant or denial of review extended. See discussion in part III-A of this disposition. Avol deserves a "fresh determination of [the] law" on the availability of attorney fees in conjunction with a claim for injunctive relief.[4] See Restatement (Second) of Judgments, § 29 cmt. i (1980).
 
 III. Coverage
 
 10
 Avol claims that the section 1021.5 attorney fees are covered under the supplementary provision of the insurance policies that provide: "The company will pay, in addition to the applicable limit of liability: all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company...." The insurers argue that this is an excess liability provision that depends upon coverage under the general liability provisions. They argue that the underlying claim here is not covered under the general policy because it is an action for injunctive relief arising out of a breach of contract by Avol.
 
 A. Injunctive Relief
 
 11
 The California courts have recently held that "a suit for equitable relief could in some cases result in 'damages' within the meaning of a general liability insurance policy." City of Pomona, 4 Cal.App.4th at 834 (relying on AIU, 51 Cal.3d at 825-28). In AIU, the California Supreme Court held that the response and cleanup costs connected with an injunction ordering the cleanup of hazardous waste were "damages" within the meaning of an insurance policy. 51 Cal.3d at 831. The City of Pomona court extended AIU 's holding to the costs of complying with a potential injunction to change an at-large voting system, and attorney fees awarded pursuant to 42 U.S.C. § 1988. It found that those were "damages" within the meaning of the insurance policies which gave rise to a duty to defend the City of Pomona in the underlying action. 4 Cal.App.4th at 837.
 
 
 12
 In deciding whether section 1988 attorney fees were "damages" covered under the policies, the City of Pomona court stated that: "The relevant inquiries in these cases appears [sic] to be whether the insurer has unambiguously (1) defined the term 'damages,' (2) excluded equitable forms of relief in its policies, or (3) obligated itself to pay expenses or costs." Id. at 838. The insurers in that case defined "damages" as "all sums which the insured shall become legally obligated to pay," as do the Scottsdale and National policies. Id. at 839, 841. This definition did not incorporate the law-equity distinction nor did it limit damages to "compensation in money."[5] Id. at 839, 841. Therefore, a reasonable insured person would believe that the policy provided coverage for all forms of civil liability, including attorney fees. Id. at 838. There was no exclusion for claims of injunctive relief. As such, attorney fees awarded under 42 U.S.C. § 1988 were "damages" within the meaning of the policy. City of Pomona, 4 Cal.App.4th at 840.
 
 
 13
 Two of the multiple insurers in City of Pomona obligated themselves to pay costs by including "expenses" language in their policies. Id. at 840. That language provided coverage for "all sums paid as ... fees, charges and law cost, ... expenses for ... lawyers." Id. Two other insurance companies obligated themselves to pay costs through supplementary payment provisions, identical to those contained in the Scottsdale and National policies. Id. at 841. Those companies agreed to pay "all costs taxed against the insured." Id.
 
 
 14
 The facts here are closely analogous to the City of Pomona case. Therefore, section 1021.5 attorney fees are damages within the meaning of the policies. On one hand, the fees are analogous to money damages and thus fall within the policies' general provision to pay all damages that Avol is legally obligated to pay. See City of Pomona, 4 Cal.App.4th at 835; Press v. Lucky Stores, Inc., 34 Cal.3d 311, 321-24, 193 Cal.Rptr. 900, 667 P.2d 704 (1983) (calculation of section 1021.5 attorney fees). On the other hand, attorney fees awarded pursuant to a statute are classified as costs. Cal.Civ.Proc.Code § 1033.5; Marini v. Municipal Court, 99 Cal.App.3d 829, 833, 160 Cal.Rptr. 465 (1979). Whether these attorney fees are characterized as damages or costs, they fall within the coverage of the policies.
 
 
 15
 Furthermore, regardless of the fact that the California court separated the injunctive relief from the damage relief part of the Castenada litigation for the purpose of computing attorney fees, it does not follow that the same separation should be made for insurance coverage purposes. The underlying case was not simply one for equitable relief. Plaintiffs claimed both damages arising out of certain acts and asked that similar acts be enjoined for the future. It is not at all clear that a person who may be sued for both damages and an injunction arising out of the same acts should reasonably expect that his policy will cover the costs of obtaining the damage relief part of the litigation, but not the injunctive relief part. The expectations of coverage are as reasonable as those considered in AIU, and it is doubtful that the California Supreme Court would allow coverage in this case to stand on the law-equity dichotomy.
 
 B. Contractual Liability
 
 16
 Even if attorney fees awarded in an action for equitable relief can be damages or costs, coverage under these policies only exists when an insured becomes legally obligated to pay damages "because of bodily injury or property damage ... caused by an occurrence." This phrase in an insurance policy has been construed to mean that the policy covers only tort, not contract, liability. Fireman's Fund Ins. Co. v. City of Turlock, 170 Cal.App.3d 988, 995, 216 Cal.Rptr. 796 (1985); International Surplus Lines Ins. Co. v. Devonshire Coverage Corp., 93 Cal.App.3d 601, 611, 155 Cal.Rptr 870 (1979).
 
 
 17
 The Castenada plaintiffs pled both tort and contractual claims. See AIM Ins. Co. v. Culcasi, 229 Cal.App.3d 209, 217, 280 Cal.Rptr. 766 (1991) (when a complaint pleads both contract and independent tort causes of action, it does not sound only in contract). However, the form of an action is not determinative of its underlying nature.
 
 
 18
 It is true that "[w]ithout the contract of tenancy between the Avols and the Castenada plaintiffs, plaintiffs would never have been subjected to the conditions alleged and would never have had proper standing to seek and obtain recovery; they would not have been able to receive the injunctions and the attorneys' fees therein." Home Indemnity, 706 F.Supp. at 731. However, even though a tenant would not be on property as a tenant if there were no rental agreement, the mere existence of that agreement does not insulate the landlord from tort liability. See, e.g., Becker v. IRM Corp., 38 Cal.3d 454, 213 Cal.Rptr. 213, 698 P.2d 116 (1985) (landlord strictly liable for tenant's broken arm due to latent defect in shower door); Kwaitkowski v. Superior Trading Co., 123 Cal.App.3d 324, 329, 176 Cal.Rptr. 494 (1981) (landlord liable for rape, assault, and robbery in dimly lit, unsecure lobby); Evans v. Thomason, 72 Cal.App.3d 978, 984, 140 Cal.Rptr 525 (1977) (landlord liable for tenants' property damage from fire caused by defective electrical outlet); Brennan v. Cockrell Investments Inc., 35 Cal.App.3d 796, 111 Cal.Rptr. 122 (1973) (landlord liable for defective stairway railings). Indeed, even an unlawful detainer action can sound in tort. Fragomeno v. Insurance Co. of the West, 207 Cal.App.3d 822, 830-31, 255 Cal.Rptr. 111 (1989). So can a breach of the warranty of habitability, in the right circumstances. Stoiber v. Honeychuck, 101 Cal.App.3d 903, 918-20, 162 Cal.Rptr. 194 (1981).
 
 
 19
 Thus, the question is whether under the circumstances of this case the underlying action sounds in tort. In the Castenada complaint, the tenants did make allegations of property damage and bodily injury. Moreover, the injunctions preclude Avol from committing future torts like interfering with the tenants' mail, unlawfully entering their premises, and retaliating against the tenants for participating in the lawsuit. The injunctions also require Avol to repair his premises and install security measures in order to prevent future tortious injuries from burglaries, assaults, batteries, auto vandalism, and invasion of privacy--injuries for which he might well be held liable in tort.
 
 
 20
 In other words, while it is true that the tenants would not have so suffered if they did not have their tenancy agreements, the existence of those agreements does not insulate the insurers from liability. Were it otherwise, landlords would, in general, have no liability insurance to cover injuries to their tenants. That is neither a reasonable reading of the policies nor of the law. More pertinently, the injunctive relief was directly related to the tort aspects of the case. Avol was required to pay damages for old wrongs and was enjoined from committing new ones. California would not hold that the liability for the former was covered while liability for the latter was not.
 
 CONCLUSION
 
 21
 We hold that Scottsdale and National did not waive their lack of coverage assertions nor are they estopped. On the other hand, Avol is not collaterally estopped from asserting coverage. We further hold that under the law of California, the district court erred when it granted summary judgment to Scottsdale and National on grounds that there was no coverage because the attorney fees awarded against Avol were related to injunctive relief and to enforcement of contractual obligations.
 
 
 22
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court did not award attorney fees for the damages claim because it found that the tenants' attorneys were adequately compensated by the contingency fee award
 
 
 [2]
 Avol was represented by his own personal attorney, Mr. Albertstone, throughout the injunctive portion of the action. Albertstone was paid as Cumis counsel by the insurers. The insurers then assumed Avol's defense for the damage portion of the litigation
 
 
 [3]
 The insurers argue that even if Avol were entitled to waiver or estoppel, the defense of unclean hands would prevent equitable relief in his favor. However, this defense is inapplicable to this situation. There was no bad conduct by Avol in conjunction with the insurance transaction. The fact that Avol's underlying slumlord activity might be "bad" has nothing to do with the unclean hands defense in relation to the claims under the insurance policies
 
 
 [4]
 It is also noteworthy that there appears to be no reason why the insurers could not have easily joined in the earlier action. See Parklane, 439 U.S. at 331, 99 S.Ct. at 652
 
 
 [5]
 One insurance policy in City of Pomona did define "damages" as a "monetary judgment award." 4 Cal.App.4th at 842. However, even this definition did not prevent coverage because the policy did not exclude expenses incurred in complying with a court order and there was still a potential for a nominal damage award. Id