[No. A043879. First Dist., Div. Three. July 31, 1990.]

HORSEMEN'S BENEVOLENT AND PROTECTIVE
ASSOCIATION, INC., Plaintiff and Appellant, v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant and
Respondent.

COUNSEL

Bornstein & Sturm and Isidoor Bornstein for Plaintiff and Appellant.

Long & Levit, Victoria B. Henley and Glenn W. Angers for Defendant and Respondent.

## OPINION

MERRILL, J.—Horsemen's Benevolent and Protective Association, Inc. (Horsemen's), appeals from the summary judgment granted in favor of respondent Insurance Company of North America (INA) on Horsemen's complaint for bad faith breach of insurance contract, breach of fiduciary duties, misrepresentation and fraud and breach of duties under Insurance Code section 790.03. We affirm.

I

Preliminarily we note that on motion for summary judgment the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) On appeal, we review directly the papers submitted in connection with the motion, considering only their construction and effect. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) The following facts are set forth in consideration of these principles.

*Underlying lawsuits—the Rivera action*

Horsemen's is an organization which provides benevolent and financial assistance to its members, approximately 50,000 licensed owners and trainers of thoroughbred horses. For the benefit of its members, Horsemen's purchased a public liability insurance policy from the Bellefonte Insurance Company for the time period January 1, 1978, to January 1, 1980. Horsemen's represented to its members, in two publications, that the Bellefonte policy included liability for accidents occurring on the racetrack. However, the policy contained an explicit exclusion, for "bodily injury to any person while . . . rac[ing,] . . . exercising or training any horse."

On July 10, 1979, jockey Armando Rivera was injured permanently during a training session at the Sonoma County racetrack. Rivera filed a lawsuit against three members of Horsemen's; the owners of the horse which collided with the horse upon which he was riding, Harris Farms, Inc., and Kemper Marley, Sr., and the trainer, Gregory Gilchrist. The Rivera defend-

ants tendered their defense to Bellefonte, under their belief that the policy acquired by Horsemen's for their benefit provided coverage.

In turn, based on the racing and training exclusion, Bellefonte filed a declaratory relief action against the three Rivera defendants and Horsemen's, seeking a declaration that its policy provided no liability coverage for this accident. The Rivera defendants filed separate cross-complaints against Horsemen's, alleging that in its official publications it had misrepresented the extent of coverage provided in the Bellefonte policy.

Horsemen's tendered the defense of the cross-complaint to INA, one of several insurance companies from which it had purchased a general liability policy for its business activities. However, INA denied coverage and refused to provide Horsemen's a defense based on the following provisions of the policy: "The Company will pay on behalf of the Insured, except as hereafter provided, all sums which the Insured shall become legally obliged to pay as damages because of: [¶] . . . PERSONAL INJURY or [¶] . . . PROPERTY DAMAGE caused by an occurrence during the policy period and within the policy territory." " 'Occurrence' " is defined as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured; [¶] . . . 'Personal injury' means bodily injury or if arising out of bodily injury, mental anguish. . . . [¶] . . . 'Property damage' means (1) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed[.]"

*The instant action*

Horsemen's settled the claims of Harris, Marley and Gilchrist. It then filed a complaint against INA and other insurers for bad faith breach of the insurance contract, among other causes of action, for the failure to defend or indemnify Horsemen's in connection with the cross-complaints filed by the Rivera defendants in the declaratory relief action instituted by Bellefonte. The complaint alleges that INA's failure to indemnify and defend Horsemen's in the action gave rise to the various causes of action.

The papers submitted by INA in support of summary judgment demonstrate that the cross-complaints of the Rivera defendants resulted from Horsemen's misrepresentations and omissions in connection with the Bellefonte policy. The INA policy provided no coverage for such liability. Horsemen's did not become liable to the cross-complainants because of any personal injury or property damage suffered by them.

In its opposing declarations, Horsemen's conceded that the publications informing its membership of the Bellefonte policy failed to make reference to the racing and training exclusion.

## II

The sole issue presented by Horsemen's appeal is whether a triable issue of material fact exists as to the existence of coverage under the INA policy for the liability created by the cross-complaints. Horsemen's argues that it became liable to cross-complainants Harris, Marley and Gilchrist "because of personal injury" as defined in the policy. If not for Rivera's personal injury, Horsemen's submits, it would not have become liable in the subsequent cross-complaint. Horsemen's argument is unpersuasive.

A summary judgment motion shall be granted if all the papers submitted show that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In order to prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].)

The papers submitted in connection with the summary judgment here conclusively demonstrate the INA liability policy for personal injury or property damage did not provide coverage for the defense or indemnity of the cross-complaints against Horsemen's. The three cross-complaints against Horsemen's were premised on allegations of fraud or intentional and negligent misrepresentation concerning the racing and training exclusion in the Bellefonte policy. The cross-complainants did not allege liability on the part of Horsemen's for any personal injury or property damage suffered by them.

The case at bench is analogous to the opinion in *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601 [155 Cal.Rptr. 870]. In *International Surplus,* a general insurance agent, Devonshire, issued to a client a $500,000 fire insurance policy from the insurance carrier, Central National Insurance Company. Pursuant to its agreement with Central, Devonshire was obligated to either obtain reinsurance for any amount over $500,000 or indemnify Central for the excess. When the client suffered a fire loss in excess of $1 million, Central paid the claim and sought reimbursement from Devonshire.

Devonshire tendered the claim to Hartford, its general liability insurance carrier, relying on the policy provision that: " 'The Company will pay on

behalf of the insured all sums which the insured shall become *legally obligated to pay as damages* because of . . . property damage . . . caused by an occurrence . . . .'" (*International Surplus Lines. Ins. Co. v. Devonshire Coverage Corp., supra*, 93 Cal.App.3d at p. 608.) The court analyzed that Devonshire's liability to Central could only be viewed in one of three ways: 1) as a negligent failure to obtain reinsurance; 2) as Devonshire having assumed, by its agreement to indemnify, a portion of Central's obligation to the client under the fire insurance policy; 3) as a direct breach by Devonshire of the agency contract provision to pay Central for any excess loss. (*Id.*, at p. 611.) The court concluded that coverage under the Hartford policy did not exist as no conduct by Devonshire resulted in any property damage or personal injury as set forth in the Hartford general liability policy. (*Ibid.*)

Similarly, while the claim against the Rivera defendants was because of personal injury, their cross-complaint against Horsemen's was because of misrepresentation and fraud. These claims cannot be considered as constituting claims for personal injury or property damage as contemplated by the INA general liability policy.

In its argument, Horsemen's relies heavily on the inapposite opinion in *Globe Indem. Co.* v. *State of California* (1974) 43 Cal.App.3d 745 [118 Cal.Rptr. 75], which held that fire fighting expenses incurred by the state came within the coverage of the insured's comprehensive general liability policy and comprehensive personal policy. The pertinent provisions stated that the insurer would pay on behalf of the insured all sums which the insured became legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence. Pursuant to a state statute, an individual who causes a fire, resulting in damage to the property of others, is responsible for the state's fire fighting expenses. The issue in *Globe* was whether the insurance policies in question provided coverage for the state's fire fighting expenses, where the insured's liability therefor was imposed by law. It was unquestioned that the "occurrence" as stated in the policy was the fire which started on the insured's property and spread to adjoining property. The court found coverage existed, reasoning that the legal obligation to pay the state's fire costs arose because of the property damage which occurred in the fire. Further, the court analyzed that as the policy covered indemnification for property damaged by the insured's negligence, it must also cover sums incurred in the mitigation of such damage. (*Id.*, at pp. 748-750.)

In the first instance, *Globe* is distinguishable from the case here because the "occurrence" which triggered Horsemen's liability was its misrepresentation and fraud as to the Bellefonte policy, and not Rivera's riding acci-

dent. In *Globe*, the "occurrence" was the fire caused by the insured's negligence, a covered event under the policy. Additionally, unlike *Globe*, cross-complainants are not seeking to recover compensation for any personal injury or property damage for which Horsemen's is legally responsible. *Globe* is inapplicable to the instant case.

The absence of coverage under the INA policy conclusively negates Horsemen's causes of action for bad faith breach of contract as no duty to indemnify or defend existed here. (See *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 772 [215 Cal.Rptr. 416].) The cause of action for violation of Insurance Code section 790.03, a codification of the common law tort of breach of the covenant of good faith and fair dealing (*General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 822 [220 Cal.Rptr. 291]), also fails as INA had no duty to indemnify or defend. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171].) Further, as Horsemen's causes of action for breach of fiduciary duties and misrepresentation and fraud were premised on the existence of liability coverage for claims made by the cross-complainants, they must fail.

The judgment is affirmed.

White, P. J., and Strankman, J., concurred.

On August 27, 1990, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 18, 1990. Mosk, J., was of the opinion that the petition should be granted.