78 F.3d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard K. EHRLICH, Plaintiff-Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY; Travelers Insurance
Companies, Defendants-Appellees.
 No. 94-55481.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1995.
Decided Feb. 26, 1996.
 
 Before: BROWNING, PREGERSON, Circuit Judges, and TANNER, District Judge.*
 MEMORANDUM**
 Plaintiff Richard K. Ehrlich ("Ehrlich") appeals the district court's grant of summary judgment in favor of defendant State Farm Fire and Casualty Company ("State Farm"). The district court found no coverage under the terms of an umbrella policy issued to Ehrlich by State Farm. The umbrella policy provides two kinds of insurance coverage: excess insurance, covering any claims made against Ehrlich in excess of $1 million and primary or "drop-down" coverage for claims not covered by an underlying general liability policy ("underlying policy") in excess of $10,000. Ehrlich contends that he has coverage under the State Farm umbrella policy's drop-down provision. We reverse and remand. We conclude: (1) that there are material issues of fact whether a valid underlying policy exists to trigger the umbrella policy's "drop-down" provision; (2) that the umbrella policy's exclusions do not act as a complete bar to coverage; and (3) even if the exclusions did act as a complete bar to recovery, there are material issues of fact whether State Farm waived the umbrella policy's exclusions when it acknowledged coverage in this case.
 FACTS
 The underlying facts are known to the parties and need not be restated at length. Ehrlich was sued in a separate action (the "Camequin action"), for the alleged faulty construction of certain real properties. Ehrlich contacted The Travellers' Company ("Travellers"), an original co-defendant, for possible indemnification. Travellers declined to defend him. Ehrlich then tendered a claim for the Camequin action to State Farm based on the umbrella policy. After State Farm allegedly acknowledged coverage, Ehrlich settled the Camequin action for $200,000. Because State Farm ultimately denied coverage under the umbrella policy, this suit followed.
 DISCUSSION
 A. Standard of Review
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to the non-moving party, we determine whether there are any genuine issues of material fact. Id. We also determine whether the district court correctly applied the substantive law. Id. In this diversity suit, California substantive law applies. Allstate Ins. Co. v. Smith, 929 F.2d 447, 449 (9th Cir.1991) (citing Hampton v. Gebhardt's Chili Powder Co., 294 F.2d 172, 172 (9th Cir.1961)).
 B. Excess Coverage
 The district court correctly held that excess coverage under the umbrella policy was not triggered because the policy only covers claims in excess of $1,000,000, and Ehrlich settled the Camequin action for $200,000. Excess insurance coverage, by definition, only comes into play when the insured becomes liable for an amount exceeding the limits of the underlying policy--in this instance, $1,000,000. Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1504 (9th Cir.1994); see also Signal Companies, Inc. v. Harbor Ins. Co., 27 Cal.3d 359, 366-7 (1980).
 C. "Drop-Down" Coverage
 Ehrlich argues that the umbrella policy provides primary or "drop-down" coverage for losses over $10,000 when a valid underlying liability policy does not cover a claim. The relevant policy provision states:
 With respect to any occurrence not covered by the underlying insurance listed in Declarations Items 6 ... or any other underlying insurance collectible by the Insured, but covered by this policy except for the amount of retained limits specified herein, this Company will in addition to the amount of ultimate net loss payable [provide a defense and pay expenses for an action arising out of such an occurrence].
 Umbrella Policy (ER at 50) (excerpts of record's pages are not numbered consecutively).
 State Farm does not dispute that the umbrella policy can provide "drop-down" coverage. But before the umbrella policy can drop-down and act as a primary policy, the insured must show that a valid underlying policy exists and that this underlying policy does not cover the underlying claims. State Farm maintains that no valid underlying policies exist in this case. Ehrlich disputes this fact.
 When opposing State Farm's motion for summary judgment, Ehrlich for the first time claimed that State Farm had issued eight general liability policies that could act as valid underlying policies for the purpose of triggering the umbrella policy's "drop-down" provision.
 Apparently the district court made no findings of fact regarding the purported State Farm underlying policies because these policies were not referred to in Ehrlich's complaint. Ehrlich explained before the district court that he did not refer to the general liability policies in the complaint because he did not realize that they existed until just before State Farm's motion for summary judgment. Additionally, he contends that once he tendered his claim for the Camequin action to State Farm, State Farm had a duty to search through its files to determine whether Ehrlich owned any other State Farm policies; Ehrlich has a point. The district court may have erred in refusing to consider the State Farm general liability policies which Ehrlich claims existed.
 Accordingly, we remand because there are genuine issues of material fact whether the underlying policies actually exist. To trigger the umbrella policy's "drop-down" provision, Ehrlich would have to prove on remand that the purported underlying policies, though valid, did not cover the Camequin action.
 D. The Exclusions
 The district court also concluded that the umbrella policy exclusions precluded full recovery in this case. Because the interpretation of an insurance policy, like any contract, is a question of law, we review de novo the district court's ruling that the umbrella policy's exclusions apply. See Aetna Cas. and Sur. Co. Inc. v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991).
 The district court correctly held that the Camequin action's claims of breach of implied warranty were not covered by the umbrella policy. The umbrella policy states that it will indemnify Ehrlich for losses which he "shall become legally obligated to pay." Umbrella Policy (ER at 50). Such policies have been interpreted to cover "only tort liabilities, and not those in contract." Fireman's Fund Ins. Co. v. City of Turlock, 170 Cal.App.3d 988, 995 (1985). Because a breach of implied warranty claim is based in contract, the umbrella policy does not cover such a claim.
 The district court, however, incorrectly held that the "work performed" exclusion applied here. The "work performed" exclusion excludes claims or losses for property damage resulting from "work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." Umbrella Policy (ER at 51) (emphasis in original). The district court found that "the plaintiff development corporation was the general contractor of the project that is the subject of the underlying dispute." Reporter's Transcript of Proceedings (ER at 5). As a result, the district court concluded that the construction work was excluded because it was performed by the "Named Insured."
 Ehrlich argues on appeal that the "work performed" exclusion does not apply here because the district court ignored the distinction between "Insured" and "Named Insured." These terms are defined differently under the umbrella policy. The policy defines "Insured" as the individuals designated in Declaration Items 1 and 2; here Richard K. and Marcia Ehrlich. The "Named Insured" is defined as "the person or organization in the Declarations and includes any subsidiary thereof and any other organization coming under the Named Insured's control of which it assumes active management." Umbrella Policy (ER at 50). Therefore, for the "work performed" exclusion to apply, it appears that the damages must arise from work performed "by or on behalf of" the Insured, here "Richard K. and Marcia Ehrlich."
 In this case, however, the work that gave rise to the Camequin action appears to have been performed "by or on behalf of" Ehrlich's companies. Ehrlich states that it is uncontroverted that:
 Ehrlich ... did nothing on this project in his individual capacity. He was not personally responsible for the design, engineering, supervision or construction of the Panorama View Homes. Nor did he personally contract with the subcontractors for the construction of the homes.
 Memorandum of Contentions of Fact and Law at 9. Because no work appears to have been performed "by or on behalf of" Ehrlich himself, the umbrella policy's "work performed" exclusion does not apply here, even though Ehrlich was sued as an individual in the Camequin action.
 The district court also erred in ruling that the claims for negligent misrepresentation in the Camequin action were excluded under the personal injury exclusion. This provision states in relevant part:
 IT IS AGREED THAT EXCEPT INSOFAR AS COVERAGE IS AVAILABLE TO THE INSURED IN THE UNDERLYING INSURANCE AS SET FORTH IN THE SCHEDULE OF UNDERLYING INSURANCE, THIS POLICY WILL NOT APPLY TO LIABILITY ARISING OUT OF ONE OR MORE OF THE FOLLOWING OFFENSES:
 * * *
 (5) DISABILITY, SHOCK, MENTAL ANGUISH OR MENTAL INJURY.
 Umbrella Policy Following Form (ER at 61). The district court applied this exclusion here because it found that the third party plaintiffs were only seeking emotional distress damages resulting from the alleged misrepresentation.
 A review of the underlying Camequin complaint shows no such damages limitation of the third party plaintiffs' claims for negligent misrepresentation. The third party plaintiffs' Third Cause of Action for Negligent Misrepresentation "reallege[s] paragraphs 1 through 15 of the First and Second Causes of Action." First Amended Complaint for Damages (ER at 19). Paragraph 9 of the complaint claims damages for "discomfort and mental emotional distress" as well as "loss of value of the residences." Id (ER at 17). Because the district court applied the personal injury exclusion to exclude all damages, including damages for "loss of value," the district court erred.
 E. Waiver
 Even if the exclusions were to bar Ehrlich's claim, it appears that State Farm may have waived the umbrella policy's exclusions when it acknowledged coverage in this case.[1] The Supreme Court of California has stated that in insurance cases, it will find waiver when a "party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such a right has been relinquished." Waller v. Truck Ins. Exchange, 44 Cal.Rptr.2d 370, 387 (1995). Furthermore, "[u]nder California law, waiver is a question of fact." Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1559 (9th Cir.1991).
 Ehrlich claims that State Farm has waived its use of the exclusions as a defense because it acknowledged coverage.[2] In opposing State Farm's motion for summary judgment, Ehrlich stated that:
 [The day after] State Farm was informed that a settlement in the San Mateo Actions had been negotiated and was provided with the names of those to contact should State Farm wish to become involved in the settlement prior to it becoming final ... Lisa Ehrlich was contacted by State Farm's senior claims specialist Jack Flanagan. During that conversation, Mr. Flanagan was informed that the purchasers had alleged damage in excess of $2.5 million and that attorneys fees and costs incurred in defending the San Mateo Actions had exceeded $400,000. Mr. Flanagan acknowledged coverage and informed Ms. Ehrlich that State Farm would provide coverage if Ehrlich had a primary policy in effect. A letter was sent confirming this conversation. Thereafter, State Farm failed to contact Ehrlich or his agents to inform Ehrlich how to proceed with the claim.
 Memorandum of Contentions of Fact and Law at 3.
 Viewing this evidence in the light most favorable to Ehrlich, we find that State Farm's acknowledgment of coverage may be construed as "inconsistent with an intent" to assert the exclusions as a defense. In addition, the evidence suggests that it may have been reasonable for Ehrlich to have believed and thus relied on State Farm's acknowledgment of coverage in settling the Camequin action. See Intel, 952 F.2d at 1559 ("in [insurance] cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured"). On remand, the district court should determine whether State Farm's acknowledgment of coverage constituted a waiver.
 F. Bad Faith
 The district court denied Ehrlich's bad faith claim because it found there was no coverage available. The absence of coverage precludes a finding of bad faith. Horseman's Benevolent & Protective Association v. Insurance Co. of North America, 222 Cal.App.3d 816, 822 (1990); California Shoppers, Inc. v. Royal Globe Insurance Co., 175 Cal.App.3d 1, 54 (1985). If, on remand the district court finds coverage under recently disclosed primary policies or under the umbrella policy, then Ehrlich may have a viable bad faith claim regarding State Farm's failure to defend him. See Egan v. Mutual of Omaha, 24 Cal.3d 809, 818-19 (1979).
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 State Farm did not waive its defense of the umbrella policy's exclusions by failing to plead the exclusions as an affirmative defense. While State law defines the nature of defenses, the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs. In Healy Tibbits Constr. Co. v. Insurance Co. of N. Am., 679 F.2d 803, 804 (9th Cir.1982), this court held that insurance policy exclusions need not be pled as affirmative defenses
 
 
 [2]
 Ehrlich raises this issue for the first time on appeal. Because we are reversing the district court's grant of summary judgment, we are addressing the waiver issue to guide the district court on remand