FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 27 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BLISS SEQUOIA INSURANCE & RISK
ADVISORS, INC.; HUGGINS
INSURANCE SERVICES, INC.,

Plaintiffs-Appellants,

v.

ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,

Defendant-Appellee.

No.    20-35890

D.C. No. 6:20-cv-00256-MC

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted January 18, 2022
Honolulu, Hawaii

Before:  Diarmuid F. O'Scannlain, Eric D. Miller, and Kenneth K. Lee, Circuit
Judges.

Opinion by Judge Miller;
Dissent by Judge O'Scannlain

# SUMMARY[*]

## Oregon Insurance Law

The panel affirmed the district court's summary judgment in favor of Allied Property & Casualty Insurance Company in a diversity insurance action concerning coverage for any liability that Bliss Sequoia Insurance and Risk Advisors might incur for damages because of bodily injury.

One of Bliss Sequoia's clients was a water park, and after a park guest was injured, the park sued Bliss Sequoia for professional negligence, alleging that the coverage limits on the park's liability insurance were too low. In 2014, Bliss Sequoia procured coverage on behalf of the water park with an overall limit of $5 million. A year later, a boy was seriously injured at the park, and his family ultimately settled for $49 million. Facing liability well in excess of its insurance coverage, the water park sued Bliss Sequoia for professional negligence. Bliss Sequoia sought coverage from its general liability insurer, Allied Property, which denied coverage. Bliss Sequoia filed this action seeking a declaratory judgment that Allied had a duty to defend and indemnify.

Allied's policy provided that it covered any sums Bliss Sequoia was "legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" Bliss Sequoia alleged that the bodily injury at issue was a "but-for" cause of Bliss Sequoia's professional-negligence liability. The panel held that pure but-for causation would result in infinite liability for all wrongful acts, and therefore, the law almost never employs that standard without limiting it in some way. The law cuts off remote chains of causation by applying common law principles of proximate causation.

The panel considered the central question posed by the case: Would Oregon courts construe "because of bodily injury" in the policy to refer to pure but-for causation, or would they impose some more restrictive causation standard? The Oregon Court of Appeals in *Holman Erection Co. v. Employers Insurance of Wausau*, 920 P.2d 1125 (Or. Ct. App, 1996), held that policy coverage for damages

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"because of bodily injury" did not extend to a breach-of-contract suit another step removed from any injury. Pure but-for causation was not enough. The panel held that although there was no Oregon Supreme Court case directly on point, nothing in Oregon jurisprudence suggested that Oregon courts would depart from the general principles of causation that American courts apply in this and other contexts. In addition, the Oregon Supreme Court has applied those principles to the interpretation of insurance contracts in *Oakridge Community Ambulance Service, Inc. v. United States Fidelity & Guaranty Co*., 563 P.2d 164 (Or. 1977) (providing that a pure but-for causation analysis has no place in Oregon insurance law). In light of this authority, the panel saw little reason to delay the resolution of the case by certifying the question to the Oregon Supreme Court. The panel concluded that the phrase "because of bodily injury" in Bliss Sequoia's insurance policy included only damages that reasonably or foreseeably resulted from bodily injury—not just any that may arise in a daisy chain of lawsuits connected in some way to someone's injury. Accordingly, the personal-injury lawsuit against the water park arose "because of bodily injury," but the claims of professional negligence did not. Because Bliss Sequoia's policy did not cover those claims, Allied had no duty to defend or indemnify Bliss Sequoia against them.

Judge O'Scannlain dissented. Because there is no controlling precedent in the decisions of Oregon appellate courts on the question of whether, under Oregon insurance law, there is "any reasonable doubt" as to the meaning of the term "because of," he would certify this case to the Supreme Court of Oregon. He dissented from the majority's decision to reach the merits.

---

## COUNSEL

---

Syed S. Ahmad (argued), Hunton Andrews Kurth LLP, Washington, D.C.; David Parker, Hunton Andrews Kurth LLP, Richmond, Virginia; Rachel E. Hudgins, Hunton Andrews Kurth LLP, Atlanta, Georgia; Cody B. Hoesly, Larkins Vacura Kayser LLP, Portland, Oregon; Michael L. Huggins, Hunton Andrews Kurth LLP, San Francisco, California; for Plaintiffs-Appellants.

Owen R. Mooney (argued), Bullivant Houser Bailey PC, Seattle, Washington; R. Daniel Lindahl, Michael A. Guadagno, and Richard Williams, Bullivant Houser Bailey PC, Portland, Oregon; for Defendant-Appellee.

MILLER, Circuit Judge:

Bliss Sequoia Insurance and Risk Advisors held an insurance policy from Allied Property and Casualty Insurance covering any liability that Bliss Sequoia might incur for "damages because of 'bodily injury.'" One of Bliss Sequoia's clients was a water park, and after a park guest was injured, the park sued Bliss Sequoia for professional negligence, alleging that the coverage limits on the park's liability insurance were too low. This appeal presents the question whether that negligence claim arose "because of" the guest's "bodily injury" and is therefore covered by Bliss Sequoia's policy. We agree with the district court that the answer is no.

This case begins with Cowabunga Bay Water Park in Henderson, Nevada, and the first of two insurance policies. In 2014, the operator of the park sought professional risk-management advice from Bliss Sequoia Insurance and Risk Advisors, Inc. and Huggins Insurance Services, Inc. (collectively, Bliss Sequoia) regarding the nature and amount of insurance that would be sufficient to insure the water park. Bliss Sequoia procured coverage on behalf of the water park with an overall limit of $5 million.

Just one year later, six-year-old Leland Gardner was seriously injured in a near-drowning incident at the water park, allegedly due to the park's insufficient

staffing of lifeguards. The boy's family sued the park, which ultimately settled for $49 million. Its liability coverage, however, was $44 million shy.

Facing liability well in excess of its insurance coverage, the water park sued Bliss Sequoia for professional negligence. (It also asserted a claim of negligent misrepresentation, but the distinction between the two claims is irrelevant to this appeal.) As part of a settlement agreement with the Gardners, the water park assigned its claims against Bliss Sequoia to the family. Shortly after that settlement, the Gardners brought their own third-party complaint asserting the assigned claims and alleging harms "[a]s a result of the insufficient and substandard risk management and insurance brokerage advice and recommendations given by [Bliss Sequoia]."

In response, Bliss Sequoia turned to its general liability insurer, Allied Property and Casualty Insurance, to defend and indemnify it against the professional-negligence claims. According to Bliss Sequoia, Allied was obligated to do so based on the following provision in Bliss Sequoia's insurance contract with Allied:

> [Allied] will pay those sums up to the applicable Limit of Insurance that [Bliss Sequoia] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Allied] will have the right and duty to defend [Bliss Sequoia] against any "suit" seeking those damages for which there is coverage under this policy.

The policy further specified that "bodily injury" must be "caused by an 'occurrence,'" including an "accident," and that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"

After Allied denied coverage, Bliss Sequoia filed this action in the District of Oregon. Invoking the district court's diversity jurisdiction, *see* 28 U.S.C. § 1332, Bliss Sequoia sought a declaratory judgment that Allied has a duty to defend and indemnify it. The district court granted summary judgment to Allied, concluding that the claims against Bliss Sequoia do not arise "because of bodily injury."

Bliss Sequoia appeals. We review the district court's grant of summary judgment de novo. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019). The parties agree that the insurance policy is governed by Oregon law, so we must construe it as the Oregon Supreme Court would. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938); *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). In so doing, we are "obligated to follow the decisions of the state's intermediate appellate courts" unless there is "convincing evidence that the state supreme court would decide differently." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

The critical language in the policy provides that it covers any sums Bliss Sequoia is "legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" Bliss Sequoia asserts that the claims against it for professional negligence arose "because of" Gardner's bodily injury. And if "because of" is understood in its broadest possible sense, Bliss Sequoia has a point. Gardner's bodily injury caused his family to sue the water park, which in turn caused the park to sue Bliss Sequoia for professional negligence. No bodily injury, no professional-negligence claims. To put it in the more technical language often used in tort law, Gardner's bodily injury was a "but-for" cause of Bliss Sequoia's professional-negligence liability. *See United States v. George*, 949 F.3d 1181, 1187 (9th Cir. 2020) (explaining that "a but-for cause of a harm can be anything without which the harm would not have happened").

But the broadest possible understanding of "because of" is hardly a reasonable one, and "a but-for cause is not always (in fact not often) a cause relevant to legal liability." *United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010). Taken literally, but-for causation is an extraordinarily expansive concept. As the Supreme Court has explained, "[i]n a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond." *Holmes v. Securities Inv. Prot. Corp.*, 503 U.S. 258, 266 n.10 (1992) (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts*

5

§ 41, at 264 (5th ed. 1984)). For example, while Bliss Sequoia's liability would not have been incurred but for Gardner's injury at the water park in Henderson, Nevada, it is equally true that it would not have been incurred but for the construction of that water park years before; or but for the ingenuity of Herbert Sellner, who in 1923 obtained the first patent for a water slide in the United States; or, indeed, but for the late-Miocene rise of the Sierra Nevada Mountains,[*] which gave Henderson a hot, dry climate that is well suited to water parks.

To take another example, imagine that a law firm held an insurance policy with the same language as that held by Bliss Sequoia, and suppose that the firm was sued for malpractice for its handling of a corporate bankruptcy case. No one would suggest that such a malpractice claim would reflect "damages because of bodily injury." But what if the reason the corporation went bankrupt was that it had made defective products that injured consumers? Asked that question at oral argument, Bliss Sequoia embraced the *reductio ad absurdum* and admitted that, in its view, the hypothetical malpractice claims would indeed be "because of bodily injury."

---

[*] Or perhaps earlier—the elevation history of the Sierra Nevada is the subject of ongoing research, and "there remains significant disagreement" among geologists. Hari T. Mix, et al., *A Hot and High Eocene Sierra Nevada*, 128 Geological Soc'y of Am. Bull. 531, 531 (2016). We take no position on that controversy.

That strikes us as a highly improbable understanding of the scope of the coverage that Bliss Sequoia bargained for. If "because of" were understood to refer to literal but-for causation, that is, "to mean just a condition that had to exist for the event in question to occur," then "liability insurance companies would have no way of setting premiums equal to expected cost; they would be insuring against a range of possible claims so vast that an estimate of the probability that a claim within that range would actually be filed would be arbitrary." *James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 387 (7th Cir. 2009).

Because pure but-for causation "would result in infinite liability for all wrongful acts," the law almost never employs that standard without limiting it in some way. *Holmes*, 503 U.S. at 266 n.10 (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 41, at 264). Instead, the law cuts off remote chains of causation by applying "common-law principles of proximate causation." *Id.* at 267; *see Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 531–33 (1983). "Generally, proximate causation exists only when a harm was a foreseeable result of the wrongful act." *George*, 949 F.3d at 1187.

Courts use different labels—such as "proximate," "foreseeable," or "direct"—to refer to the required causal connection, but neither the label nor the precise contours of the standard need detain us because in this case, there seems to

7

be no dispute that under *any* standard more restrictive than pure but-for causation, Bliss Sequoia's professional-negligence claims do not involve damages "because of bodily injury." So the question before us boils down to this: Would Oregon courts construe "because of" to refer to pure but-for causation, or would they impose some more restrictive causation standard?

The Oregon Court of Appeals answered that question in *Holman Erection Co. v. Employers Insurance of Wausau*, 920 P.2d 1125 (Or. Ct. App. 1996). There, a subcontractor's employee sued the general contractor for injuries sustained on the jobsite. *Id.* at 1127. Because the subcontractor had failed to procure insurance on behalf of the general contractor (as it was required to do by the terms of their contract), the general contractor had to defend and pay claims for the employee's injury that otherwise would have been insured. *Id*. The general contractor, in turn, brought a breach-of-contract action against the subcontractor for failure to procure insurance, and the subcontractor asked its own insurer to defend against the general contractor. *Id*. But the insurer refused. *Id*. The only basis for coverage was a policy clause requiring the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" *Id*. at 1128–29 (emphasis omitted). And the Oregon court rejected an expansive reading of that clause. *Id*. at 1129. While recognizing that the subcontractor would not have been liable to the general contractor but for the employee's bodily injury, the court held that policy

8

coverage for damages "because of bodily injury" did not extend to a breach-of-contract suit another step removed from any injury. *Id*. at 1129 & n.8. In other words, pure but-for causation was not enough.

Not surprisingly, *Holman Erection* is consistent with the analysis employed in other jurisdictions. In *Horsemen's Benevolent & Protective Ass'n v. Insurance Co. of North America*, for example, the California Court of Appeal came to the same conclusion in a situation exactly paralleling this one. 271 Cal. Rptr. 838 (Cal. Ct. App. 1990). An injured jockey sued the owner and the trainer of the horse he had been riding; the defendants in that suit turned around and sued the horsemen's association (which had procured their insurance policy) for fraud and misrepresentation related to gaps in the coverage; and the horsemen's association in turn sought indemnity under a policy covering damages "because of" personal injury. *Id.* at 838–39. But the court held that the policy did not cover the fraud and misrepresentation claims. *Id.* at 840–41. It explained that the association was "not seeking to recover compensation for any personal injury or property damage for which [it] is legally responsible," so the "claims cannot be considered as constituting claims for personal injury" under the policy. *Id.* (Although the California Supreme Court later overruled one of the decisions on which the California Court of Appeal had relied, that decision did not involve the standard of

causation, so its overruling has no effect on the analysis here. *See Vandenberg v. Superior Ct.*, 982 P.2d 229, 246 (Cal. 1999).)

So far as we are aware, no other jurisdiction has adopted a pure but-for causation test in these circumstances. Various state courts have considered whether damages "because of bodily injury" include damages for loss of consortium or other derivative claims. *See, e.g., Connecticut Ins. Guar. Ass'n v. Fontaine*, 900 A.2d 18, 22, 24 (Conn. 2006) (answering the question in the affirmative because loss of consortium is "derivative and inextricably attached to the claim of the injured spouse" (quoting *Izzo v. Colonial Penn Ins. Co.*, 524 A.2d 641, 645 (Conn. 1987)). But in most of those cases, courts did not consider the standard of causation at all, so their analysis is of minimal relevance here.

In those cases in which courts have considered causation, they have rejected the position that but-for causation is sufficient. *See, e.g., Concord Gen. Mut. Ins. Co. v. Doe*, 8 A.3d 154, 157–58 (N.H. 2010) (explaining that an "injury must originate from, grow out of, or flow from" a cause, and stating that "we agree with those jurisdictions that have rejected the 'but for' causation test"); *State Farm Mut. Auto. Ins. Co. v. Shaffer*, 888 S.W.2d 146, 147, 149 (Tex. App. 1994) (holding that punitive damages did not arise "because of bodily injury," even if the injury was the but-for cause of the punitive damage award); *State Cap. Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 69 (N.C. 1986) (stating that establishing a causal

10

connection requires showing that an injury is "the natural and reasonable incident or consequence of the [cause]").

In short, state courts have not given a variety of answers to the question whether but-for causation on its own determines the scope of "because of bodily injury." Instead, they have uniformly rejected but-for causation.

Although there is no Oregon Supreme Court case directly on point, nothing in Oregon jurisprudence suggests that Oregon courts would depart from the general principles of causation that American courts apply in this and other contexts. To the contrary, Oregon courts have repeatedly applied those principles. In tort cases, for example, although Oregon courts do not use the term "proximate cause," they still limit liability to situations in which "the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence." *Lasley v. Combined Transp., Inc.*, 261 P.3d 1215, 1219 (Or. 2011). Likewise, in construing a statute requiring that convicted criminals pay restitution equal to the damages that "result from" their crimes, Or. Rev. Stat. § 137.106, the Oregon Supreme Court has held that "the legislature intended to apply the traditional civil law concept of reasonable foreseeability to determine whether claimed damages are 'too remote'" to be recoverable, *State v. Ramos*, 368 P.3d 446, 454–55 (Or. 2016).

And, crucially, the Oregon Supreme Court has applied those principles to the interpretation of insurance contracts. In *Oakridge Community Ambulance Service,*

11

*Inc. v. United States Fidelity & Guaranty Co.*, the court considered an insurance policy held by an ambulance service that covered damage "caused by accident and [a]rising out of the ownership, maintenance or use of the automobile." 563 P.2d 164, 166 (Or. 1977). The court recognized that construing the policy required identifying an appropriate stopping point on what it called a "continuum of causal connection." *Id.* at 167. "On one end of the continuum is the situation in which insured's ambulance while being negligently driven hits and injures a party," while "[o]n the other end is the situation in which a potential customer, upon entering insured's place of business to order an ambulance to take his sick mother to the hospital, trips over a negligently arranged rug and breaks his leg." *Id.* The court recognized that "[c]overage would exist as a matter of law in the first situation," but that "[i]n the latter situation . . . coverage as a matter of law does not exist, despite the causal connection between the broken leg and the 'ownership, maintenance or use' of the ambulance." *Id.* That is so even though, "had it not been for insured's ownership, maintenance and use of the ambulance, the customer would not have been in insured's office to order an ambulance for his mother and would not have broken his leg." *Id.* In other words, although but-for causation would exist, the causal connection "would be too attenuated to afford coverage." *Id.* That decision makes clear that a pure but-for causation analysis has no place in Oregon insurance law.

In light of this authority, we see little reason to delay the resolution of this case by certifying the question to the Oregon Supreme Court, something neither party has requested. In some cases, certification may promote "comity and federalism" by allowing state courts to resolve important questions of public policy implicated by open questions of state law. *Busker v. Wabtec Corp.*, 903 F.3d 881, 882 (9th Cir. 2018). But only by ignoring *Holman Erection*, *Oakridge Community Ambulance Service*, and the other Oregon authorities cited above could one view this case as presenting a genuinely open question of Oregon law. Certification is not to be ordered lightly. *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc). When there is little reason to doubt the answer to a state-law question, we ought not outsource our work to a state court simply because we find the burden of decision unwelcome.

Nor do we think it appropriate to refrain from publishing an opinion because this case involves an issue of state law. Congress has chosen to extend the jurisdiction of the federal courts to cover diversity cases, 28 U.S.C. § 1332, and it has authorized us to hear appeals in those cases, *id.* § 1291. In common-law jurisdictions, the traditional way in which courts resolve cases is through decisions that have precedential effect. *See* 1 William Blackstone, *Commentaries on the Laws of England* 69 (1765). That does not mean that every case requires a precedential opinion. *See* 9th Cir. R. 36-3; *Hart v. Massanari*, 266 F.3d 1155 (9th

Cir. 2001). But it does mean that publishing an opinion is hardly an unusual act that requires a special justification. Nothing in section 1332 or our circuit rules suggests that the diversity jurisdiction should be a special precedent-free zone so that each panel—or each district court—may be a law unto itself.

We conclude that the phrase "because of bodily injury" in Bliss Sequoia's insurance policy includes only damages that reasonably or foreseeably result from bodily injury—not just any that may arise in a daisy chain of lawsuits connected in some way to someone's injury. Accordingly, the Gardners' personal-injury suit against the water park arose "because of bodily injury," but the claims of professional negligence did not. And because Bliss Sequoia's policy does not cover those claims, Allied has no duty to defend or indemnify Bliss Sequoia against them.

**AFFIRMED.**

*Bliss Sequoia v. Allied Property*, No. 20-35890

O'SCANNLAIN, Circuit Judge, dissenting:

Regrettably, I cannot join the majority's Opinion on Oregon law.

The question before us is whether, under Oregon insurance law, there is "any reasonable doubt" as to the meaning of the term "because of." *See, e.g.*, *N. P. Ins. Co. v. Hamilton*, 22 P.3d 739, 742 (Or. 2001). As the parties and the majority agree, the question "may be determinative of the cause" now pending before us, and "there is no controlling precedent in the decisions" of Oregon appellate courts. *See* Or. Rev. Stat. § 28.200; § 28.205. Therefore, I would certify this case to the Supreme Court of Oregon, and thus, respectfully, must dissent from the majority's decision to reach the merits.

I

We should have certified this case because it involves an open and hotly contested state-law issue, which is demonstrated by the fact that many states have reached a variety of answers to the same question. The majority declines to certify because, in its view, it would be unreasonable for Oregon's courts to interpret the term "because of" to mean direct, "but-for" causation in an insurance policy. Maj. Op. at 5. That would come as news to the Supreme Court of Connecticut. *See Conn. Ins. Guar. Ass'n v. Fontaine*, 900 A.2d 18, 23 (Conn. 2006); *Izzo v. Colonial Penn Ins. Co.*, 524 A.2d 641, 645 (Conn. 1987). And the Supreme Court of Nebraska.

*Wilson v. Cap. Fire Ins. Co. of Lincoln*, 286 N.W. 331, 333 (Neb. 1939). Same for the Supreme Court of Massachusetts. *Worcester Ins. Co. v. Fells Acres Day Sch., Inc.*, 558 N.E.2d 958, 972–93 (Mass. 1990).[1] So, too, for the California Courts of Appeal. *See, e.g.*, *Mid-Cent. Ins. Co. v. Bash*, 259 Cal. Rptr. 382, 386 (Cal. App. 5th Dist. 1989); *United Services Auto. Ass'n. v. Warner*, 135 Cal. Rptr. 34, 36-37 (Cal. App. 4th Dist. 1976).[2]

Moreover, some states that have not expressly adopted "but for" causation standards have nevertheless recognized that the term "because of" is susceptible to more than one reasonable interpretation, and therefore ambiguous. New York's highest court found a policy covering "damages because of 'bodily injury'" to be ambiguous. *Charles F. Evans Co., Inc. v. Zurich Ins. Co.*, 731 N.E.2d 1109, 1110 (N.Y. 2000). Texas courts reached the same conclusion. *State Farm Mut. Auto. Ins. Co. v. Shaffer*, 888 S.W.2d 146, 148–49 (Tex. App. Hous. [1st Dist.] 1994), *writ denied* (Apr. 27, 1995); *see Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809,

---

[1] Several of the cases cited herein concern derivative claims. *See, e.g.*, *Fontaine*, 900 A.2d. at 23. This does not alter the fact that these cases concern the interpretation of "because of."

[2] The only case cited by the majority as exemplary of "the analysis employed in other jurisdictions" is a California Court of Appeal case that was later overruled by the Supreme Court of California. *Compare Vandenberg v. Super. Ct.*, 982 P.2d 229, 246, 246 n.13 (Cal. 1999) (overruling *International Surplus* and all "Court of Appeal decisions adhering to the holding of *International Surplus*"), *with Horsemen's Benv. & Protective Ass'n. v. Ins. Co. of N.A.*, 271 Cal. Rptr. 838, 839 (Cal. App. 1st Dist. 1990) (relying exclusively on *International Surplus*).

813 (Tex. 2006) (citing *Shaffer* approvingly). And other states have adopted all sorts of expansive causation standards in insurance cases. *See Concord Gen. Mut. Ins. Co. v. Doe*, 8 A.3d 154, 157 (N.H. 2010); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 69 (N.C. 1986); *see also Pope v. Stolts*, 712 S.W.2d 434, 437 (Mo. App. E. Dist. 1986).

Perhaps, as the majority suggests, the state courts of Connecticut, Nebraska, Massachusetts, California, New York, Texas, New Hampshire, North Carolina, and Missouri are each unreasonable, or all experiencing a sort of mass delusion. I am inclined to view our state judicial colleagues more charitably. Or, at the very least, I am inclined to give the courts of Oregon an opportunity to join the *folie à neuf*.

II

To be sure, Oregon need not say that "but for" is a reasonable reading of "because of." Not all states do. *See, e.g.*, *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 5 (Alaska 2004); *Lovewell v. Physicians Ins. Co. of Ohio*, 679 N.E.2d 1119, 1122 (Ohio 1997). Had we certified this case to the Supreme Court of Oregon, it would have had the opportunity to adopt any of these tests, or to articulate a different standard altogether, anywhere along the spectrum of causation. Or, perhaps the Supreme Court of Oregon would have, as usual, "consider[ed] differing judicial interpretations of an insurance policy clause as evidence that that clause is ambiguous." *Allianz Glob. Risks US Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 483 P.3d

3

1124, 1150 (Or. 2021), *opinion adhered to as modified on reconsideration*, 489 P.3d 115 (Or. 2021).

Indeed, in the absence of state-law guidance, we must leave the balancing of the pros and cons of a certain interpretation to state courts. *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019). Such concerns are heightened in insurance cases, where states are known to adopt wildly different constructions of the same term. *Compare Queen Anne Park HOA v. State Farm*, 183 Wash. 2d 485, 492 (2015), *with Doheny W. Homeowners' Ass'n v. Am. Guarantee & Liab. Ins. Co.*, 60 Cal. App. 4th 400, 402 (1997), *and with Cent. Mut. Ins. Co. v. Royal*, 269 Ala. 372, 375 (1959). Although federal judges may be tempted to take an "*Erie* guess," even the best judges should proceed with caution when filling the void of state law with our intuition of what is "reasonable." *See, e.g.*, *Emmis Commc'ns Corp. v. Ill. Nat'l Ins. Co.*, 929 F.3d 441 (7th Cir. 2019) (failing to apply "the rule favoring coverage when multiple reasonable readings of an insurance policy might apply" and rejecting the insured's proposed interpretation) (Barrett, J.), *withdrawn on rehearing*, 937 F.3d 836 (7th Cir. 2019).

## III

Admittedly, if the Supreme Court of Oregon were to reject certification, we would have no choice but to decide this case by way of an *Erie* guess.[3] In that event, it would still be best to do so in an unpublished, non-precedential disposition, as we typically have done for most purely state-law decisions.[4] *See Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1080–81 (9th Cir. 2020) (R. Nelson, J., concurring).

## IV

For the foregoing reasons, I would simply have asked Oregon's Supreme Court whether it wishes to exercise its sovereign authority to expound Oregon law in this unsettled area.

---

[3] Although rejection is a possibility, we should not be too pessimistic. State courts have shown that they are willing to accept certification. *See Yamashita v. LG Chem, Ltd.*, 48 F.4th 993 (9th Cir. 2022) (certifying question); Order Regarding Certified Questions, *Yamashita v. LG Chem, Ltd.*, SCCQ-22-0000538 (Sup. Ct. Haw. Sep 21, 2022), Dkt. 4 OAQ (order accepting certification) (filed 13 days after our certification request).

[4] "Anybody," even a federal judge, "can write [new state law]. It merely requires a complete ignorance of [federalism and comity]." Oscar Wilde, *The Critic as Artist: With Some Remarks Upon the Importance of Doing Nothing* (1891), *reprinted in The Artist as Critic: Critical Writings of Oscar Wilde* 341, 358 (Richard Ellman ed., 1982) (whimsically paraphrased).